ONE PEARL CHAIN (DULLES, Claimant) v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. June 10, 1903.)

No. 186.

1. TRIAL—MOTION TO DIRECT VERDICT—QUESTION FOR JURY—WAIVER.
    That the claimant, in an action to recover property seized for failure to declare the same for duty, moved the court to direct a verdict in her favor, did not constitute a waiver of her right to reserve exceptions to the refusal of her request to send the case to the jury after the denial of her motion to direct.

2. CUSTOMS DUTIES—NONDECLARED MERCHANDISE—FORFEITURE—INFORMATION.
    Rev. St. § 3082 [U. S. Comp. St. 1901, p. 2014], declares that if any
    person shall fraudulently or knowingly import or bring into the United
    States any merchandise contrary to law, or shall receive, conceal, buy, or
    sell merchandise knowing the same to have been imported, etc., the
    merchandise shall be forfeited and the offender fined. *Held*, that the
    words "contrary to law" related to legal provisions not found in the sec-
    tion itself, and hence an information alleging that an importation was
    made contrary to law, without declaring the same for duty, but failing
    to allege violation of any other regulation than those prescribed in the
    statute, limited the prosecution to proof of a violation of such provisions.

3. SAME—BAGGAGE—MERCHANDISE.
    Where a passenger on a steamer purchased a pearl necklace before
    her departure from Paris, and by reason of its value wore the same
    about her neck when she made her declaration for duty, instead of
    having the same among her baggage, and the necklace was visible on her
    person, it was subject to declaration under the statutes and rules regu-
    lating passengers' baggage, and not under the regulations providing for
    the importation of merchandise.

4. SAME—FAILURE TO DECLARE—FRAUDULENT INTENT.
    When custom house officers boarded a steamship on which claimant
    was a passenger, a blank for the declaration of articles liable to duty
    was presented to her for execution. She declined to execute it, but
    appeared before the officer for examination, and informed him that she
    had bought wearing apparel abroad, but was unable to state the amount.
    No further specific questions were asked her, and the collector filled up
    the blanks with the words, "wearing apparel, value not known," which
    she signed. In the blank, under the head of "Wearing Apparel," "jewel-
    ry" was included, and plaintiff testified that she understood that wearing
    apparel covered her jewelry. At the time of landing, and before examina-
    tion of her baggage, she wore a pearl necklace, purchased abroad, which
    was visible to the officers, and which was subsequently seized before
    claimant's baggage had been passed. *Held*, that such facts were insuffi-
    cient to warrant a finding as a matter of law that claimant had done
    nothing to advise the government of her possession of such article before
    landing to justify a forfeiture thereof under Rev. St. § 3082 [U. S. Comp.
    St. 1901, p. 2014], authorizing forfeiture of articles fraudulently im-
    ported.

In Error to the District Court of the United States for the South-
ern District of New York.

This cause comes here upon writ of error to review a decree of the
District Court, Southern District of New York, forfeiting to the
United States one pearl chain, which the claimant, an American citi-
zen, and a passenger by the steamship Kronprinz Wilhelm, brought
with her, wearing it on her neck, upon her return to this country
on July 22, 1902. The information contains six counts. All of these,
however, were abandoned either upon the trial or upon the argument,
except the second, which reads as follows:

"That on or about the 22d day of July, in the year 1902, one Mrs. L. Har-
rison Dulles did fraudulently and knowingly import into the United States
and assist in so doing the said goods, wares, and merchandise, to wit, a
chain consisting of 246 pearls and a diamond clasp, contrary to law; that is
to say, that on the said 22d day of July, 1902, the said Mrs. L. Harrison
Dulles imported and brought within the United States, ex S. S. Kronprinz
Wilhelm, the said property, without mentioning or declaring the same to
the said collector, and without entering the same as dutiable, upon the
arrival of the said vessel within the United States as aforesaid, and without
paying or accounting for the duty thereof, although the same was subject

to duty by law, all contrary to section 3082 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 2014]."

That section reads as follows:

"Sec. 3082. If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both."

At the close of the trial the judge quoted this section, and added:

"There is no question that she brought the goods here knowingly, knowing that they were subject to duty, and that she did not do anything to advise the United States that she had them on her person—these dutiable articles—when she landed on the dock from the steamer. * * * If the necklace came in as merchandise, she was bound to take certain steps to enter it as merchandise, but no such steps were taken. It was not in her baggage. There was no way in which the government could protect itself, except by some declaration on her part."

And he directed the jury to find a verdict for the United States.

De Lancey Nicoll, for plaintiff in error.
A. H. King, for the United States.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). Counsel for the government contends that the claimant, having asked the court to direct a verdict in her favor, was not entitled thereafter to reserve exceptions to a refusal to send the case to the jury, which claimant requested should be done after her motion to direct verdict had been denied (Kirtz v. Peck, 113 N. Y. 222, 21 N. E. 130; Bishop v. Corning, 37 App. Div. 345, 57 N. Y. Supp. 697), and moves to dismiss the appeal. This technical rule of the state practice is not followed in this circuit (Sigua Iron Co. v. Greene, 88 Fed. 207, 31 C. C. A. 477), and the motion to dismiss is denied.

The waiver of five of the counts, the concessions made upon the argument, and the circumstance that a verdict was directed, reduce the case to be discussed here within quite a narrow compass.

Referring to a count based upon section 3082, the Supreme Court held that:

"The words 'contrary to law,' contained in the statute, clearly relate to legal provisions not found in section 3082 itself; but we look in vain in the count for any indication of what was relied on as violative of the statutory regulations concerning the importation of merchandise. The generic expression, 'import and bring into the United States,' did not convey the necessary information, because importing merchandise is not per se contrary to law, and could only become so when done in violation of specific statutory requirements." Keck v. U. S., 172 U. S. 434, 19 Sup. Ct. 254, 43 L. Ed. 505.

In the case at bar the specific violations relied upon will be found enumerated after the phrase "that is to say." They are alleged to be the importing and bringing within the United States the said property

(1) without mentioning or declaring the same to the collector, and (2) without entering the same as dutiable upon the arrival of the vessel within the United States, and (3) without paying or accounting for the duty thereof. There is no reference here to any violation of the statutes regulating permits to land (sections 2869, 2872, 2874 [U. S. Comp. St. 1901, pp. 1908, 1910]), and they need not be considered. All that is to be determined is what are the provisions as to "mentioning or declaring to the collector," as to "entering such articles as dutiable upon the arrival of the vessel within the United States," and as to "paying or accounting for the duty thereof."

We have so recently discussed this whole subject of declaration and entry of articles brought by passengers arriving by vessel from foreign countries that it will be sufficient to refer to the opinion then written for an enumeration of the sections of the Revised Statutes and their interpretation. U. S. v. One Pearl Necklace (Phyllis Dodge, Claimant) 111 Fed. 165, 49 C. C. A. 287, 56 L. R. A. 130. All articles coming from foreign countries may be divided into two great classes—those which are imported as merchandise, and those which are brought in as the baggage and personal effects of passengers. Two different systems are provided for these different classes. Sections 2785, 2872, 2874, and 2963 [U. S. Comp. St. 1901, pp. 1867, 1910, 1946], and sections 3 and 4 of the Customs Administrative Act of June 10, 1890, c. 407, 26 Stat. 131 [U. S. Comp. St. 1901, pp. 1887, 1888], regulate the importation of merchandise, with elaborate provisions about invoices, bills of lading, consular certificates from the country whence imported, etc. In the case of passengers' baggage, however, a much less complicated and more expeditious system is provided for, in sections 2799, 2801, and 2802 [U. S. Comp. St. 1901, pp. 1872, 1873], and the regulations, which will be found fully set forth in the opinion in the Dodge Case.

Upon the trial and argument of the case at bar it seems to have been assumed that this court held that a passenger's wearing apparel, articles of adornment, and personal effects ceased to be baggage the moment they were taken out of the trunk and placed on the person of the passenger, and were to be treated, for purposes of entry, etc., as imported merchandise. It is true that the opinion, in contradistinction to "merchandise," spoke of dutiable articles brought by passengers "in their packages of baggage"; but Mrs. Dodge brought her necklace in one of her packages of baggage, in a hand satchel, which, however, she failed to declare. There being no question of wearing the article, and nearly all dutiable articles coming in packages of some sort, the above-quoted phrase was used. To hold that an incoming passenger, who, arriving on a cold day, opens one of his packages of baggage and takes out a silk muffler to wrap around his neck, would be subject to have the same forfeited, although he may declare it to the customs officers, because he walked ashore with it without presenting invoice, bill of lading, and consular certificate, and obtaining a special permit, seems to us a most unreasonable proposition. The Dodge Case held only that the "merchandise" sections did not apply to passenger's baggage. It did not undertake to define "baggage." No such question arose in the

case. Nobody disputed that the necklace in that case was passenger's baggage, to be declared and entered as such.

The practice as to declaration and entry of passengers' baggage was fully set forth in the Dodge Case:

"When vessels arrive within the harbor they are boarded by the customs officers, and with their assistance the passengers are asked to subscribe a written document, entitled 'Baggage Declaration and Entry,' and fill out the blanks therein descriptive of their articles. * * * The entry and declaration by the passenger are usually made upon the vessel, and often hurriedly, and omissions may occur in the documents from inadvertence or ignorance, as well as from intention. The documents are executed in the presence of the customs officer, who administers the oath to the declaration, and who is the representative of the collector in receiving the entry. * * * When a vessel reaches the wharf, all the baggage of the passengers is transferred to a portion of it, which is surrounded with a rope and has a gate at which one of the officers is stationed. The passenger and a customs officer proceed to and select the baggage of the former, and the officer proceeds to examine it. If dutiable articles are found in the baggage, one of the appraisers assigned to that dock is called upon to appraise its value, and, after its dutiable value has been fixed, the passenger, accompanied by a customs officer, goes to the desk of the collector and pays the duty; this desk sometimes being inside the rope and sometimes outside. After the examination is complete, each piece of baggage is marked by the customs officer, and it is then permitted to be removed through the gate."

The procedure above set forth conforms to the statutes and regulations, and is the practical embodiment of the provisions of law as to "mentioning or declaring" passengers' baggage, as to "entering the same as dutiable upon the arrival of the vessel," and as to "paying or accounting for the duty thereof."

The statute relating to forfeiture of dutiable articles brought in as passengers' baggage is as follows:

"Sec. 2802. Whenever any article subject to duty is found in the baggage of any person arriving within the United States, which was not, at the time of making entry for such baggage, mentioned to the collector before whom such entry was made, by the person making entry, such article shall be forfeited," etc.

It will be noted that this section does not make the element of fraudulent intent an ingredient of the cause of forfeiture. Of this section we said in the Dodge Case:

"If at any time while the entry is being made, and before it is completed, there is a disclosure by the passenger which is sufficient to put the customs officers upon inquiry as to the dutiable character of any of the contents of the packages, we think that within the meaning of the statute it is to be deemed that the articles were 'mentioned to the collector before whom such entry was made,' notwithstanding they were not mentioned in the documents. Of course, if the articles are mentioned in the entry or declaration, they are mentioned to the collector."

Upon the argument counsel for the government conceded that if, at the time of making her baggage declaration and entry, the claimant had informed the customs officer that she had jewelry, purchased abroad, upon her person, and upon the arrival of the steamer had gone to the place on the wharf where her baggage was to be placed, and there remained ready, upon request, to exhibit the jewelry to the customs officer and appraiser, and to pay the duty on it, it could

not be fairly contended that she had "fraudulently or knowingly imported" the necklace "contrary to law." In view of the excerpt from the Dodge Case, quoted above, he was constrained to make such concession.

With this understanding of the law of the case, it will next be necessary to set forth the facts. Inasmuch as a verdict was directed against the claimant, every conflict of evidence must be resolved in her favor, and every inference from the facts be in like manner drawn in her favor, because if, upon her own statement of what took place, she did not violate the law, she was entitled to have the jury pass upon the question whether her own narrative was or was not to be accepted as the true one. Her statement is as follows: She bought the necklace just before her return from Paris. Inasmuch as it was a valuable one, she wore it around her neck throughout the voyage. On the day of her arrival she wore a white silk shirt waist, the upper part being of such texture that the pearls were visible through it. She knew the necklace was dutiable, and expected to pay, or rather to have her husband pay, the duty on it. When the vessel reached the harbor she was called to the cabin to make her declaration and entry before the acting deputy collector, and a blank printed form was presented to her for filling up and signature. It is the same form which this court a year before had characterized as failing to comply with the instructions of the Treasury Department, and as "not perspicuous and discreditable, because it is calculated to befog the understanding of those to whom it is presented." We think still, as we thought then, that this form is "inappropriate and misleading," and it would seem desirable that some one should make an effort to improve it. It reads as follows:

### Baggage Declaration and Entry.

#### District of New York, Port of New York.

I, ———, a resident of ———, residing at ———, destination ———, a passenger on the steamship ———, from ———, do solemnly and truly declare that, to the best of my knowledge and belief, I have the following pieces of baggage, namely:

| Trunks. | Bags or Valises. | Boxes. | Other Packages. | Total. |
|---------|------------------|--------|-----------------|--------|
|         |                  |        |                 |        |

That such baggage is my personal property (and that of my ———, who accompany me); that all of the articles in my baggage or on my person, purchased abroad (and intended for others or for sale), and their cost prices paid by me, or by others who have intrusted them to me, are fully set forth and described in the annexed entry; that with the exceptions of said articles, the said baggage contains only such wearing apparel and personal effects (as were taken by me and my ——— out of the United States), and include only such articles as are in the use of, and necessary and appropriate for, the immediate purposes of the journey, and present comfort and convenience of myself (and my ———), and are not articles intended for other persons or for sale. ————————, Passenger.

Subscribed and declared before me this ——— day of ———.

————————, Surveyor's Staff Officer.

Inspector's Return to Collector.

I certify that I have examined the above ——— pieces of baggage and found nothing dutiable except as entered below.

——————————, Inspector.

Entry of Articles Referred to Above.

| Description of Articles. | Foreign Cost. | Classification. | Foreign Value in U. S. Currency. | Rates of Duty. | Amount. |
|---|---|---|---|---|---|
| Wearing Apparel. { Dresses Wraps Bonnets Gloves Underwear Jewelry Coats Trousers Waistcoats | | | | | |
| Miscella- } neous. { | | | | | |

District of New York, Port of New York—ss.:

I do solemnly swear that the prices above set forth show the actual cost of [sic] foreign market value of the articles named, to the best of my knowledge and belief. A certified invoice cannot be produced for the reason ———.

Subscribed and sworn to before me this ——— day of ———.

——————————, Surveyor's Staff Officer.

A person reading this form, who was familiar with the English language only as used in ordinary nonofficial speech or writing, would naturally assume that the only articles purchased abroad by the passenger which were to be entered in the above schedule were those "intended for others or for sale." If, incautiously relying on the printed declaration thus furnished him by the government for his enlightenment and guidance, he should neglect to enter therein an article purchased abroad for himself, and, however innocently, should forget to mention it orally to the officer taking his declaration and entry, he would be likely, under the rule laid down in the Dodge Case, to discover to his sorrow that the article was forfeited and himself liable to fine and imprisonment. The claimant in this case, however, escaped that pitfall. She did not undertake the task of filling up the form, but appeared before the deputy collector with its spaces still blank, prepared to answer such questions as he might put to her. According to her narrative, he asked if she had made any purchases abroad, to which she replied that she certainly had; that she had bought wearing apparel, but was unable to state the amount of her expenditure in that line. She testified that he asked her no more specific questions, and did not ask her if she had purchased any jewelry. Thereupon the deputy collector filled up the blanks with name, residence, number of packages, etc., and on the line below the printed word "Waistcoats" wrote "Wearing apparel, value not known." Mrs. Dulles thereupon signed and made oath to the declaration. She testified that she "certainly understood" that the phrase "wearing apparel" covered her jewelry, and for that reason did not then specifically mention it. As ordinarily used, that

phrase is hardly so comprehensive. Nevertheless jewelry may fairly be called apparel, and it is worn on the person. If one chooses to classify jewelry as one variety of "wearing apparel," it cannot be held that he is making an improper and indefensible use of the English language. At any rate, the claimant's idea of classification appears to have been entirely in accord with that of the customs officers; for, in the schedule above set forth, jewelry appears as one of nine varieties of wearing apparel, being grouped between "Underwear" and "Coats."

As an entry of dutiable articles, whether silk dresses, bonnets, jewelry, or gloves, the document when signed by her was insufficient. It gave no details whatever; but section 2801 provides for a further entry of dutiable articles when found upon examination of a passenger's baggage. And in Mrs. Dulles' case such further entry was made of "silk wearing apparel" and "embroidered linen" after her trunks were examined. As we have seen, a defective or incomplete entry does not work a forfeiture under section 2802, provided the omitted articles were "mentioned to the collector before whom such entry was made." Although defective as an entry, the document was certainly sufficient as a declaration that claimant "had in her baggage and on her person wearing apparel which she had purchased abroad." And such declaration, made on a form which classified jewelry as one variety of wearing apparel, was, in the language of the Dodge Case, "a disclosure by the passenger sufficient to put the customs officers upon inquiry as to the dutiable character" of her baggage.

Having sworn to her declaration and entry, the claimant, when the steamer was berthed, came on the wharf within the customs lines, met her husband, went to the part of the dock where her baggage was placed as it came out of the ship, and remained there till it was examined, additional entry made, duty paid, and the baggage passed. She made no effort to convey the necklace beyond the lines. While she was on the dock it was seized by a customs inspector in plain clothes; but the details of that occurrence are immaterial to any of the questions presented on this appeal. Having been already seized, and no longer in her baggage or on her person, the necklace was not enumerated in the supplemental entry.

In our opinion, the District Judge erred in finding that the claimant "did not do anything to advise the United States that she had these dutiable articles on her person when she landed on the dock from the steamer," and in directing a verdict for the United States.

The decree is reversed, and cause remanded for a new trial.