## NEW YORK & N. E. R. CO. v. HYDE.

### (Circuit Court of Appeals, First Circuit. June 14, 1893.)

### No. 50.

1. BILL OF EXCEPTIONS — TIME FOR PRESENTATION AND ALLOWANCE — CIRCUIT COURT OF APPEALS.

A verdict was rendered May 27th, at the term which commenced May 15th and ended October 14th. There was no rule of court fixing the time within which a bill of exceptions should be filed, presented for allowance, or allowed; and no order relating thereto was made in the case. The bill of exceptions was filed August 25th, but was not presented to the judge until October 4th, when it was allowed, over the objection that the delay was unreasonable and unwarrantable. *Held* that, as the allowance was at the trial term, the jurisdiction of the circuit court of appeals was not affected by the delay.

2. SAME—STATE PRACTICE.

The practice in the federal courts touching the filing, presenting, or allowance of bills of exceptions, is, in no wise affected by the state practice.

3. SAME—FEDERAL PRACTICE.

In the circuit court of appeals no exceptions to rulings at a trial can be considered unless they were taken at the trial, and were also embodied in a formal bill of exceptions presented to the judge at the same term, or within a further time allowed by order entered at that term, or by standing rule of court, or by consent of parties; and, save under very extraordinary circumstances, they must be allowed and filed with the clerk during the same term. After the term has expired without the court's control over the case being reserved by standing rule or special order, all authority to allow a bill of exceptions then first presented, or to alter or amend a bill already allowed and filed, is at an end. Bank v. Eldred, 12 Sup. Ct. Rep. 450, 143 U. S. 293, followed.

4. FEDERAL COURTS—JURISDICTION—AVERMENTS OF CITIZENSHIP.

An averment that defendant is a corporation "duly established by law, and having its principal place of business in Boston, in the state of Massachusetts," is not a sufficient statement of its citizenship to show federal jurisdiction.

5. MASTER AND SERVANT — NEGLIGENCE — FELLOW SERVANTS — RAILROAD EMPLOYES.

A yard clerk or car clerk in a railroad freight station, whose duty required him to go into the yard for the purpose of getting a record of the seals of the cars which each train left or was to take away, was injured by the backing down upon him of part of a freight train in control of the engineer and train hands. *Held*, that the injury was caused by fellow servants, and the company was not liable. Railroad Co. v. Baugh, 13 Sup. Ct. Rep. 914, applied. Railway Co. v. Ross, 5 Sup. Ct. Rep. 184, 112 U. S. 377, distinguished.

In Error to the Circuit Court of the United States for the District of Massachusetts.

Action by Lavius H. Hyde against the New York & New England Railroad Company to recover damages for personal injuries received while in its employ. There was a verdict for plaintiff, and from the judgment thereon defendant brings error. Reversed.

Frank A. Farnham, (Charles A. Prince, on the brief,) for plaintiff in error.

T. Henry Pearse and Alfred Hemenway, for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge. The verdict in this cause was rendered May 27, 1892, at the term of the circuit court which commenced May 15, 1892, and ended October 14th of the same year. No order was made fixing or limiting the time within which the bill of exceptions should be presented. August 25th of the same year the bill was filed in the clerk's office, but the same was not presented to the judge who tried the cause until October 4th. At that time the plaintiff below objected to its allowance, for the cause that the delay was unwarrantable, and not reasonable, within section 953, Rev. St. The exceptions, however, were allowed. The section of the Revised Statutes referred to neither in terms nor by implication limits the time within which exceptions shall be filed or allowed, and does not aid the court in determining this question; and the decisions touching the subject-matter of that statute do not sustain the plaintiff below in claiming that the ordinary rule that what is to be done within a time not named is to be done within a reasonable time has any application to it.

There is no rule of the circuit court for the district of Massachusetts fixing the time within which a bill of exceptions shall be filed, presented for allowance, or allowed. While this court is cognizant of the hazard and great liability to doing injustice which come from allowing the incidents of a trial to remain long unfixed by formal methods, and recommends as the better practice that the trial court should protect both itself and the parties by naming by special order some reasonable time within which proceedings of this character shall be taken, yet the law is clear that our jurisdiction is not affected by the delay which occurred in the case at bar.

In Preble v. Bates, 40 Fed. Rep. 745, decided in the circuit court for the Massachusetts district, December 10, 1889, the bill of exceptions was filed within a few days of the trial, and during the same term. As there was a motion for a new trial pending, the bill was not presented for allowance until after the motion was disposed of at a subsequent term, when it was allowed. As the bill was seasonably filed, and its consideration was postponed to a subsequent term for plain reasons of convenience, it will be found from an examination of the cases hereinafter referred to that it was properly allowed.

It is deemed proper at this point to make some references to the decisions of the supreme court on this topic. First of all, as we have already stated elsewhere, counsel must not be misled by the practice in the state courts, as no portion of the proceedings touching the removal of causes in the federal courts on error or appeal, from the noting the exceptions to the close, is governed by the local rules. Chateaugay Ore & Iron Co., Petitioner, 128 U. S. 544, 553, 555, 9 Sup. Ct. Rep. 150. This has been particularly so held, with reference to settling bills of exceptions in

the case last cited, in U. S. v. Breitling, 20 How. 252, and last of all in Van Stone v. Manufacturing Co., 142 U. S. 128, 12 Sup. Ct. Rep. 181. On the other hand, the rules applicable are derived from the common law and ancient English statutes, except so far as the acts of congress control. Chateaugay Ore & Iron Co., Petitioner, 128 U. S. 555, 9 Sup. Ct. Rep. 153.

We do not need, for present purposes, to investigate these original sources, nor even to revert to the earlier decisions of the supreme court; because all that is required for the general guidance of the court and the profession will be found in the opinions of that court given this side of the year 1856. Important rules are stated in the opinion in Stanton v. Embrey, 93 U. S. 548, 554, 555; especially that, while anciently the bill should be sealed, it is now held sufficient if it be signed by the judge, and that, while the exceptions must be taken and reserved at the trial, the bill may be drawn out in form, and signed at a later period. The practice of signing without sealing was confirmed by the act of June 1, 1872, now Rev. St. § 953. This statute also provides that when more than one judge sits at the trial the presiding judge may authenticate the bill of exceptions. In U. S. v. Breitling, ubi supra, it was said that the time within which a bill may be drawn out and presented to the court "must depend on its rules and practice, and on its own judicial discretion;" and, in reply to a claim that there was in that case a rule limiting the time of filing and of allowance, it was added:

"It is always in the power of the court to suspend its own rule, or to except a particular case from its operation, whenever the purposes of justice require it."

In this case it further appeared that the bill was presented by the excepting party during the term at which the trial took place, but that the proceedings concerning it at that time were informal; and nothing further was heard by the court in reference to it until after the adjournment of the term, and after the judgment was rendered. The bill being then allowed, its allowance was sustained by the supreme court, as the circumstances were regarded as special, and within the well-settled rules explained by the same court in subsequent decisions, which will be hereafter referred to. The determination that a rule limiting the time is for the protection of the court, and may be waived by it when justice requires, was reaffirmed in Hunnicutt v. Peyton, 102 U. S. 333, 353, and must be regarded as fully settled.

In Muller v. Ehlers, 91 U. S. 249, it was held that a bill of exceptions could not be allowed after the adjournment of the term at which the judgment was rendered, unless under special circumstances, which need not be referred to here, as they will be stated later. In Hunnicutt v. Peyton it was said (page 354):

"The time within which the signature of the judge must be applied for, if within the term, is left to the discretion of the judge who noted the exception when it was made."

In Davis v. Patrick, 122 U. S. 138, 7 Sup. Ct. Rep. 1102, the exceptions were permitted to stand, although allowed subsequently

to the term at which judgment was rendered, and even after the beginning of the term of the supreme court to which the writ of error was returnable; it appearing that the delay was agreed to for the convenience of the judge, the moving party having done all he could to procure a seasonable allowance. In Chateaugay Ore & Iron Co., Petitioner, ubi supra, the supreme court issued a mandamus commanding the settling of the exceptions, although, when the writ of error to the supreme court was sued out, the term of the circuit court had adjourned without any bill having been "signed or allowed," or any time having been given, either by the consent of the parties, or by order of the court, to prepare one. It was held in this case that the bill should be allowed, because it was prepared and served within the 40 days given therefor by the rules of the circuit court. The court distinguished Muller v. Ehlers, ubi supra. In conclusion, the rule seems to be fully stated by Mr. Justice Gray in Bank v. Eldred, 143 U. S. 293, 298, 12 Sup. Ct. Rep. 450, as follows:

"By the uniform course of decision, no exceptions to rulings at a trial can be considered by this court, unless they were taken at the trial, and were also embodied in a formal bill of exceptions presented to the judge at the same term, or within a further time allowed by order entered at that term, or by standing rule of court, or by consent of parties; and, save under very extraordinary circumstances, they must be allowed by the judge and filed with the clerk during the same term. After the term has expired, without the court's control over the case being reserved by standing rule or special order, and especially after a writ of error has been entered in this court, all authority of the court below to allow a bill of exceptions then first presented, or to alter or amend a bill of exceptions already allowed and filed, is at an end."

The same rule is briefly stated in Hume v. Bowie, 148 U. S. 245, 253, 13 Sup. Ct. Rep. 582.

We cite these cases without comment, except only to observe that they do not always distinguish between the time necessary for filing or presenting a bill of exceptions and that for allowing it, neither between the time for filing and that for presenting it to the judge or court. With reference to the case at bar they make it clear that there is nothing which prohibited allowing this bill of exceptions at any time during the term at which the trial took place; and, on the other hand, various expressions, impliedly, if not expressly, maintain that the discretion to do so covered the entire term, and that the exercise of it is conclusive on the appellate court.

This court, of its own suggestion, and in accordance with the established practice of the supreme court, calls attention to the fact that the only allegation touching the jurisdictional character of the New York & New England Railroad Company is contained in the following words: "A corporation duly established by law, and having its principal place of business in Boston, in the state of Massachusetts." This fails to state by what law the corporation was established; and therefore it is an insufficient allegation that it was created by the law of Massachusetts, and was thus presumably a citizen of that state, and insufficient to bring

the case within the jurisdiction of the circuit court. A forced construction might connect the word "law" with the words "of Massachusetts;" but this would not be a natural or reasonable one. A strikingly analogous case is Pennsylvania v. Quicksilver Co., 10 Wall. 553. Here the corporation was described "as a body politic in the law of, and doing business in, the state of California." The supreme court held that this was not a sufficient allegation that it was a citizen of the state named. The opinion contained the following:

"The court is of opinion that this averment is insufficient to establish that the defendant is a California corporation. It may mean that the defendant is a corporation doing business in that state by its agent, but not that it had been incorporated by the laws of the state. It would have been very easy to have made the fact clear by averment, and, being a jurisdictional fact, it should not have been left in doubt."

The last sentence is very apt to the case at bar.

As the record now stands, the rule of Southern Pac. Co. v. Denton, 146 U. S. 202, 205, 13 Sup. Ct. Rep. 44, applies, and the circuit court was apparently without jurisdiction. In Wolfe v. Insurance Co., 148 U. S. 389, 13 Sup. Ct. Rep. 602, the court said: "It is not sufficient that jurisdiction may be inferred argumentatively from the averments." In this case the court itself took notice of the lack of sufficient pleading in this particular, and directed that the judgment should be reversed at the cost of the plaintiff in error, and the cause remanded for further proceedings. This form of order gave opportunity for amendment in the circuit court in accordance with the facts, and prevented the arising of unnecessary injustice from the insufficiency of pleading in this particular. As, however, we were advised at the argument, and have no doubt, that the jurisdictional citizenship of the defendant below exists in fact, so that an amendment and a new trial are probable, we are at liberty to depart from the usual course of procedure, and explain our views of the application to this case of Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. Rep. 914.

At the close of all the evidence the defendant below moved that the court direct a verdict in its favor, on the ground, among others, that, if the injury was caused by negligence other than that of the plaintiff below, it was that of his fellow servant. The court refused the request, and the defendant below duly excepted; so that the question whether it was entitled to the instruction asked for is properly raised in the record. The plaintiff below was injured in the freight yard of the defendant below at Willimantic, by the backing down upon him of a part of a freight train under the control, at this particular time, of the engineer and the train hands, as is frequent in freight yards; and the negligence, if any existed, was directly that of this engineer and these train hands. The plaintiff below was employed by the defendant corporation in connection with its Willimantic station in the capacity described by him as "day yard clerk or car clerk." He testified that when the freight train came into the yard, he was in the yard clerk's office; that his duty was to receive the bills of the cars which the

conductor was to leave, and to leave bills with him for the cars which he was to take, and also to get a record of the seals of the cars which he left and of those which he took; and that, for the purpose of getting this record, it was customary for him to go into the freight yard, and there examine the seals on the various cars of the trains coming in and departing. The counsel for the corporation claimed that his duty did not require him to go into the freight yard, but there was sufficient evidence in the record to justify leaving this question to the jury. No answer to this could, however, help the plaintiff below, because, if his duty did not call him to the yard, he voluntarily placed himself in danger, and if it did, then his employment clearly contemplated his working "at the same place at the same time," and in behalf of a common employer, within the meaning of the court in Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. Rep. 322.

At the trial the plaintiff below contended that the principle of fellow servants did not apply, because a "yard clerk" on the one hand, and an engineer with train hands on the other, work in separate departments; but this refinement of the law, if ever allowable, cannot be sustained with reference to this case, under the rule adopted in Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. Rep. 326, for the purpose of determining, at least to some extent, who are fellow servants. There the court said as follows:

"They are employed and paid by the same master. The duties of the two bring them to work at the same place, at the same time, so that the negligence of the one in doing his work may injure the other in doing his work. Their separate services have an immediate common object,—the moving of the trains. Neither works under the orders or control of the other."

It is true that the employes whose relations were thus discussed, were the brakeman of one train and the engineer of another; but the spirit and letter of what was there said apply to the relations of this car clerk on the one side and the engineer and train hands on the other.

We do not wish it understood that we assent to the claimed rule of law that there may be several departments among different employes of the same employer engaged in a common enterprise, to the extent and with the effect contended for by the plaintiff below at the trial of this cause. We do not understand that this doctrine has been approved except in the courts of Illinois, Georgia, Kentucky, Tennessee, and perhaps a few other states, or that it has been anywhere accepted by the supreme court. In Randall v. Railroad Co., ubi supra, the court, beside what we have cited, said that it had not hitherto had occasion to decide who are fellow servants, and that it was not necessary for the purposes of that case to undertake to lay down a precise and exhaustive definition of the general rule in that respect, nor to weigh the conflicting views which have prevailed in the courts of the several states. In Northern Pac. R. Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. Rep. 590, it was held that the employer's exemption did not in that case relieve him from a liability for

an injury to a brakeman in consequence of the negligence of another employe in permitting the brake to remain in a defective condition; but this conclusion stands upon the proposition stated in the case, and more at large in Railroad Co. v. Baugh, ubi supra, that the master cannot delegate to a servant his duty to maintain his plant in good order, so as to relieve himself. In Steamship Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. Rep. 397, this alleged rule was not discussed. It was merely held that the porter and carpenter employed aboard a steamer, and the stewardess, were fellow servants, as all had signed the shipping articles, and because, as the court said, the division into departments was evidently one for convenience in administration on the vessel. In Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. Rep. 835, in which a track repairer brought suit for damages claimed to have happened through the negligence of engineer and train hands, the court did not discuss this topic, but disposed of the case on the ground of no negligence on the part of the defendant's employes.

The supreme court of Rhode Island, in Brodeur v. Valley Falls Co., 16 R. I. 448, 17 Atl. Rep. 54, criticised very ably the rule of the state courts referred to, among other things saying as follows:

"The reasons here set forth are a strong answer to the position taken in the Illinois cases. They show an obvious impracticability in trying to gauge the liability of an employer, in a complex business, by the independence of its different branches, or by the intercommunication of those employed. Not only would it be almost impossible in many cases to separate the work into distinct departments, and to discern their dividing lines, but incidental duties, changing the relations of workmen to each other, would vary also the master's liability."

And in conclusion the general line of reasoning in Railroad Co. v. Baugh, ubi supra, seems to leave no place for this claimed rule of minor departmental divisions, as applicable to the liability of employers to employes.

The supreme court has also decided, in the case last cited, that an engineer temporarily in charge does not stand as a vice principal, as the conductor was said to in Railway Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. Rep. 184, and has undoubtedly reaffirmed Randall v. Railroad Co., ubi supra. The result is that Railroad Co. v. Ross must be regarded as exceptional, based on the supposed peculiar relations, powers, and duties of a train conductor, and has no application to the case at bar; while Railroad Co. v. Baugh, ubi supra, directly reaches it.

Judgment reversed; verdict set aside; cause remanded for further proceedings not inconsistent with this opinion; plaintiff in error to recover the costs of this court.