## UNITED STATES v. 218½ CARATS LOOSE EMERALDS

(District Court, S. D. New York. January 11, 1907.)

### No. 219.

1. CUSTOMS DUTIES—FRAUDULENT ENTRY—FALSE STATEMENT, ETC.

The first part of section 9, Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895], relating to fraudulent or false invoices, statements, practices, or appliances, has application only when such means are employed in connection with goods the importation of which is not concealed.

2. SAME—FORFEITURE—WILLFUL ACT OR OMISSION.

The penalty of forfeiture prescribed by Customs Administrative Act June 10, 1890, c. 407, § 9, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895], where any importer is "guilty of any willful act or omission by means whereof the United States shall be deprived of the lawful duties," is incurred where a passenger on a steamer willfully omits to mention to the customs officials merchandise in his possession.

3. SAME—"BAGGAGE"—ARTICLES ON THE PERSON.

Precious stones carried loose in a pocket of a passenger arriving in the United States, though not "baggage" within the common-law definition of that term, are baggage within the meaning of section 2802, Rev. St. [U. S. Comp. St. 1901, p. 1873]; and the passenger is bound to declare them in the same way as articles contained in his trunk.

[Ed. Note.—Interpretation of commercial and trade terms in tariff laws, see note to Dennison's Mfg. Co. v. U. S., 18 C. C. A. 545.]

4. SAME—MERCHANDISE UNLADEN WITHOUT PERMIT—ARTICLES ON THE PERSON.

Where a person arriving in the United States took with him from the vessel articles which he had willfully omitted to declare to the customs officers, he was guilty of unloading merchandise without a permit, in violation of section 2872, Rev. St. [U. S. Comp. St. 1901, p. 1910].

5. SAME—PRODUCTION OF INVOICE—SMUGGLED GOODS.
    Customs Administrative Act June 10, 1890, c. 407, § 4, 26 Stat. 131
    [U. S. Comp. St. 1901, p. 1888], requiring the production of an invoice or
    declaration of imported merchandise, applies only where there has been
    an actual, intentional entry of merchandise, and not where the entry has
    been concealed.

6. SAME—SMUGGLING—COMPLETION—SEIZURE WITHIN CUSTOMS LINES.
    A person arriving in the United States omitted from his declaration
    made to the customs officials on shipboard any mention of a package of
    emeralds contained in his clothing, and at the time of the examination of
    his baggage on the dock falsely stated to such officers that he had no prec-
    ious stones in his possession. Said emeralds were then seized under section
    2865, Rev. St. [U. S. Comp. St. 1901, p. 1905], providing for the forfei-
    ture of smuggled goods. *Held*, that the act of smuggling was complete
    when he had passed from the vessel to the shore, and that it was imma-
    terial that he had not gone beyond the customs lines established on the
    dock for convenience in examining baggage.

On Information for Forfeiture.

Henry L. Stimson, U. S. Atty., and Winfred T. Denison and Felix
Frankfurter, Asst. U. S. Attys.

Louis S. Phillips, for claimant.

HOLT, District Judge. This action is brought for the forfeiture
of certain emeralds alleged to have been brought into this country in
violation of the customs laws. The claimant, Manuel J. Suarez, a
resident of Bogota, in the republic of Colombia, South America, ar-
rived at New York on October 3, 1906, on the steamship Oceanic,
from England. His native language was Spanish. He could not
speak English, but had some knowledge of the French language, al-
though how much does not clearly appear. On the arrival of the ship
the customs officer who took the declarations of the passengers asked
him, in French, if he understood French, and he said that he did. He
asked him how many pieces of baggage he had, and he answered,
"Three." The examiner testified that he did not seem to clearly un-
derstand his questions as to what particular kind of baggage he had.
The examiner thereupon drew his pen through the printed form on the
declaration for the insertion of the number of trunks, bags, or valises,
boxes, and other packages, and wrote under the head of "Total," at
the end, the figure "3." The officer asked him, in French, whether he
had anything to declare, whether he had any gifts for other persons,
and whether he had anything to sell, to all of which he answered,
"No." Thereupon Suarez signed his name at the end of the declara-
tion, and swore to it before the officer. Suarez then left the ship, and
went on the dock. He had as baggage a trunk, a box, and two hand-
bags tied together. He stated to the customs officer on the dock that
he was going to Colombia, that he wished to leave with the collector
the trunk and the box, and that he wished to take with him while in
this country the two bags. They were thereupon opened, the contents
examined and found to contain nothing dutiable, and were labeled by
the customs inspector as being passed. The customs inspector then
called another inspector, who spoke Spanish, and directed him to ask
Suarez whether he had any precious stones or jewelry upon his per-
son or in his pockets. The inspector did so in Spanish, putting vari-

ous specific and particular inquiries, and to all of them Suarez answered in the negative. He was then taken on board the steamer and searched, and in the pocket of his overcoat was found a package which contained cut emeralds, loose and unpierced, weighing 218½ carats, which were thereupon seized by the government and which are the subject of this suit for confiscation. The information claims that these goods should be forfeited on the ground that the merchandise was imported by means of a fraudulent and false written statement and affidavit, to wit, the sworn baggage declaration, and by means of a fraudulent and false verbal statement, to wit, the false statement that he had not any precious stones in his baggage, and by means of a false and fraudulent practice, to wit, that he had the emeralds concealed on his person at the time of landing, in violation of section 9 of Act Cong. June 10, 1890, c. 407, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895], commonly called the "Customs Administration Act." The essential part of such section is as follows:

"That if any owner, importer, consignee, agent, or other person shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or shall be guilty of any willful act or omission by means whereof the United States shall be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from the person making the entry, shall be forfeited."

In my opinion the first part of section 9 relates to fraudulent or false invoices or other papers or statements, written or verbal, or practices or appliances, resorted to or employed in connection with the entry of merchandise, the entry of which itself is not concealed. I think, therefore, that the evidence in this case does not establish the charge contained in the original first cause of forfeiture alleged in the information. Upon the trial, however, the first cause of information was amended by alleging that Suarez was guilty of a willful act and omission by means whereof the United States might be and was deprived of lawful duties accruing upon the said merchandise, to wit, in willfully omitting to mention said merchandise in the declaration and statements, written and oral, made by him to the customs officers. This amendment states a case covered by the latter part of section 9 of the customs administration act, and, in my opinion, is established by the evidence. The baggage declaration which Suarez signed and swore to states, in its printed form, that he arrived with the total of three pieces of baggage, and, regarding the two handbags which were fastened together as one, this statement was correct. I think that, strictly speaking, this package of emeralds was not baggage or a part of baggage. It may, however, have been brought over in one of the trunks, boxes, or bags of Suarez, in which case it would have been his duty to declare it in the declaration. The fact that French was not his native language, and that he was not examined in Spanish at the time the declaration was made, would make it proper not to lay too much weight on his omission to declare these emeralds as part of his baggage, although the inspector testified that he asked him whether he had any-

thing to declare or any gifts, or anything to sell. But the evidence of Hawes, the inspector who spoke Spanish, that he explicitly and repeatedly asked him whether he had any jewelry or precious stones in his pockets or about his person, to all of which questions he replied, "No," satisfies me that Suarez understood the purpose of the inquiry, and was intentionally concealing the fact. · He states, in the written · statement which he made immediately after the seizure, as follows:

"When the ·interpreter asked me if I had brought here any jewelry or precious stones, and I told him no, it was not with the intention of denying that I had brought the larger package, but, as they were not intended to be left here, I did not think they should be declared, and especially so as they should be taken charge of by the collector."

I think, therefore, that the evidence establishes that Suarez was guilty of a willful act or omission by means whereof the United States was deprived of the lawful duties accruing upon the emeralds by carrying them concealed in his coat pocket and denying that he had any such precious stones upon his person.

The second cause of forfeiture alleged in the information charges that the emeralds were found in the baggage of Suarez, to wit, in a parcel carried by him in his pocket, and that the merchandise was not mentioned at the time of making entry of his baggage, contrary to the provisions of section 2802 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 1873]. There is nothing in the evidence to show that these stones ever were carried in the trunk, box, or bags constituting Suarez's baggage. Even if they had been, they would not be strictly baggage. These were loose unpierced cut emeralds. They could not be used for any personal purpose, and did not constitute baggage, in the common-law sense of that term. The steamship company would not have been subject to the liability which a common carrier is under in respect to the baggage of a traveler, if they had been lost while in its custody. They were, ·in fact, merchandise, being brought into this country on the person of Suarez. It is a singular fact that the United States statutes contain no specific provision applicable to such a case. The general provisions in regard to the importation of merchandise have in view the ordinary importation of goods as a part of the cargo of a ship, and not in the personal custody of any one. The provision in regard to a passenger's baggage assumes that whatever small articles a passenger brings into this country will be contained in his trunk or bags. The case of a person bringing merchandise into this country in his pockets is not specifically provided for by any statute. I think, however, that such merchandise may be treated as baggage within the sense of the customs laws. A package carried in the pocket does not differ essentially from a package carried in the hand, and, in my opinion, if it contains dutiable merchandise, the passenger is bound to declare it in all respects the same as he is bound to declare merchandise contained in his trunk.

The third cause of forfeiture stated in the information is, in substance, that Suarez unloaded the said merchandise from the vessel without a permit from the collector or any naval officer, as required by section 2872 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 1910]. This section obviously is intended generally to ap-

ply to the unloading of general merchandise, which has been imported in a vessel in the ordinary manner, unaccompanied by the owner or consignee; and it seems at first a rather strained construction to apply it to the case of a passenger carrying merchandise upon his person, but I think it applies.  These emeralds were either merchandise or baggage.  If they were merchandise, they could not be landed from the vessel without a permit, and the permit, in the case of a passenger carrying them upon his person, would be obtained upon his declaring, before he left the ship, that he had them, and providing for the payment of the duties on them.  I think the evidence in this case sustains the third cause of forfeiture alleged in the information.

The fourth cause of forfeiture alleges two distinct grounds of proceedings.  The first is, in substance, that these emeralds were imported without an invoice or declaration, as required by section 4 of the customs administration act.  I think that this section prescribes what papers shall be produced and what proceedings shall be taken in connection with an actual intentional entry of merchandise, and that it does not apply to a case where the entry of the merchandise itself is concealed.  The second ground stated in the fourth cause of forfeiture is that Suarez unlawfully and knowingly smuggled and clandestinely introduced the emeralds into the United States, in violation of section 2865 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 1905].  This is the general section providing for the forfeiture of smuggled goods.  The United States Supreme Court held, in Keck v. United States, 172 U. S. 434, 19 Sup. Ct. 254, 43 L. Ed. 505, that under this section goods cannot be forfeited as having been smuggled until they have actually left the ship and reached the shore.  In that case, the owner of certain diamonds in Europe requested the captain of a steamer to bring the package containing them to this country, and mail it to the address of a person who was his partner in the West, assuring the captain that the package contained nothing valuable. The goods were seized by the customs inspectors before they left the ship.  The Supreme Court held, against a strong dissenting opinion, that the goods were not forfeited under this smuggling statute, because the offense of smuggling at common-law was not completed until the goods had left the ship and reached the shore; that, although it was apparent that the owner intended to smuggle when he delivered them to the captain of the vessel, he could change his mind at any time until they actually left the ship; and, if he had done so, the goods would not have been forfeited.  Counsel for the claimant in the case at bar claims that that case controls in this case.  The evidence shows that the emeralds in question, although they were taken off the ship onto the dock, had not been taken outside of the custom house lines on the dock. It is argued that the custom house lines on the dock are simply established for the convenience of passengers; that the custom house officers might examine the property on the vessel; that, until any property has passed the custom house lines, it is to be regarded as being on the vessel; and that, therefore, the smuggling act does not apply to these emeralds.  But, in my opinion, the fact that these emeralds were taken off the ship to the shore is sufficient to make them subject to the provisions of the section prohibiting smuggling.  Suarez took them with

him on the dock. He had them with him when his baggage was examined! He was particularly interrogated as to whether he had any such stones with him, and denied it. The argument of the claimant's counsel would go the length of saying that under those circumstances the customs authorities could do nothing, and must wait until he had gone out through the custom house lines before they could arrest the person of the passenger or seize the precious stones concealed upon his person. I think that when the proper officer of the customs examined his baggage and put to him the questions whether he had any personal property which he had not declared, or any precious stones upon his person or in his pockets, he was obliged to state the truth, and that when that examination was finished, and he still had these emeralds in his pocket, without having admitted it, the act of smuggling was complete.

I felt at first some doubt in this case. Suarez speaks no English. He lives in South America, and was going there. He declared his intention of leaving a portion of his baggage with the collector, and my first impression was that, being ignorant of our language and of our customs laws, and of the practice of declaring dutiable articles on arrival at this port, he might really have intended to leave these emeralds with the collector while he stopped in New York with a part of his luggage. But a careful consideration of the evidence convinces me that he completely comprehended what the questions were that were put to him, and that if he had honestly intended to make no use of these emeralds in this country, but to take them with him to South America, he would either have put them in the trunk or box which he was to leave with the collector, or would have announced, at the same time that he said he was going to leave his trunk and box with the collector, that he also had a package of emeralds which he would leave with him. His own declaration made at the time shows that he understood the questions which were put to him, and the reasons that he gives for giving false answers to the questions are in my opinion unsatisfactory and entirely insufficient.

My conclusion is that the government is entitled to a judgment of forfeiture in this case.