ROGERS v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. July 13, 1910.)

No. 2,009.

1. CUSTOMS DUTIES (§ 121*)—SMUGGLING—"CONTRARY TO LAW."

Rev. St. § 3082 (U. S. Comp. St. 1901, p. 2014), provides that if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise "contrary to law," or shall receive, conceal, buy, sell, or in any manner facilitate the transportation,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

concealment, or sale of such merchandise after importation, knowing the same to have been imported contrary to law, such merchandise shall be forfeited and the offender fined or imprisoned. *Held*, that the words "contrary to law," as used in such section, relate to legal provisions other than those found in such section.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 121.*]

2. CUSTOMS DUTIES (§ 134*)—"SMUGGLING"—INDICTMENT.

An indictment, alleging that accused at Sault Ste. Marie, Mich., did unlawfully, knowingly, and fraudulently import and bring into the United States certain merchandise, to wit, 3½ yards of black woolen suiting cloth of the value of $10, contrary to law—that is, clandestinely and without entering the same at the United States Customs Office and port of entry with the United States Collector of Customs and paying the duty thereon—the same being foreign merchandise subject to an import duty as provided in Act July 24, 1897, c. 11, 30 Stat. 151 (U. S. Comp. St. 1901, p. 1626), sufficiently charged "smuggling," denounced by Rev. St. § 2865 (U. S. Comp. St. 1901, p. 1905), providing that if any person shall knowingly and willfully, with intent to defraud the revenue of the United States, smuggle, or clandestinely introduce into the United States, any goods, wares, or merchandise subject to duty by law, and which should have been invoiced, without paying or accounting for the duty, or shall make out or pass, or attempt to pass, through the customhouse, any false, forged, or fraudulent invoice, etc., shall be guilty of a misdemeanor.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 337; Dec. Dig. § 134.*

For other definitions, see Words and Phrases, vol. 7, p. 6535.]

3. CUSTOMS DUTIES (§ 134*)—"BRING INTO THE COUNTRY CLANDESTINELY"— "CLANDESTINELY INTRODUCE."

An indictment for smuggling, charging that defendant did "bring into the country clandestinely" certain dutiable goods, was synonymous with the provision of Rev. St. § 2865 (U. S. Comp. St. 1901, p. 1905), making it an offense to "clandestinely introduce" dutiable goods into the country with intent to avoid payment of duty.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 337; Dec. Dig. § 134.*

For other definitions, see Words and Phrases, vol. 2, p. 1216.]

4. INDICTMENT AND INFORMATION (§ 59*)—STATUTES—INTENT OF DISTRICT ATTORNEY.

Where an indictment states an offense within any statute, it is not material that the district attorney had other statutes in mind when drawing it.

[Ed. Note.—For other cases, see Indictment and Information, Dec. Dig § 59.*]

5. CRIMINAL LAW (§ 1056*)—TRIAL—EXCEPTIONS—TIME.

An exception to instructions taken after verdict is unavailable.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2668, 2670; Dec. Dig. § 1056.*]

6. CUSTOMS DUTIES (§ 122*)—SMUGGLING—ELEMENTS OF OFFENSE.

Where defendant, having dutiable goods secreted on his person, knowingly passed the customs office at the dock where he entered the United States and ignored three distinct calls of the customs officer before his further progress was arrested and the goods disclosed, when he stated for the first time that he expected to enter the goods at the main customhouse some distance away, instead of at the dock, a finding that he intended to evade entering the goods or paying the duty at all, and that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexe*

he was guilty of smuggling, was justified under the rule. that a person becomes guilty of that offense by avoiding the first opportunity given to make a customs' declaration and pay the duty.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 263; Dec. Dig. § 122.*]

In Error to the District Court of the United States for the Western District of Michigan.

Thomas N. Rogers was convicted of unlawfully importing into the United States certain merchandise without entering. the same in the United States customs and paying the duty thereon, and he brings error. Affirmed.

John W. Shine, for plaintiff in error.

George G. Covell, U. S. Atty., and Wm. K. Clute, Asst. U. S. Atty.

Before SEVERENS and WARRINGTON, Circuit Judges, and SANFORD, District Judge.

WARRINGTON, Circuit Judge. Plaintiff in error was prosecuted and convicted under an indictment of one count returned June 8,. 1909, in which it was charged that Rogers on December 9, 1908, at Sault Ste. Marie, Mich.,

"* * * did unlawfully, knowingly and fraudulently import and bring into the United States certain merchandise, to wit, 3½ yards of black woolen suiting cloth of the value of, to wit, $10, contrary to law, that is to say, clandestinely and without entering the same at the United States Customs Office and port of entry with the United States Collector of Customs * * * and paying the duty thereon; the same being foreign merchandise subject to an import duty as provided in act July 24, 1897 [30 Stat. 151, c. 11 (U. S. Comp. St. 1901, p. 1626)]. * * *"

The verdict was rendered June 15, 1909, and sentence to pay a fine of $100 was pronounced on the following day. Proceedings in error were instituted to have the case reviewed here. Eight assignments of error are made, but only one exception appears to have been taken before the jury was discharged, and that was to the refusal of the court to grant certain special instructions.

It is disclosed by the evidence that on December 9, 1908, Dr. Rogers,. who was a resident and practicing physician of Sault Ste. Marie,. Mich., took passage upon the ferryboat at Sault Ste. Marie, Ontario,. and crossed the river to his own city; that upon arrival of the boat at the dock in the latter city he entered a footway leading southwest-wardly toward the northwest corner of the ferry ticket office and to a point within a few feet of the northeast corner of the customs office maintained there, the footway leading thence through a gate open-ing into a fenced inclosure and extending along the north, east, and south sides of the ticket office to a point opposite the southerly por-tion of the customs office, where the footway turned southwardly into a passageway extending along the east side of the immigrant office through another gateway and southwardly to an adjacent street car line. The distance between the west side of the ferry ticket office and the east side of the customs office is 14 feet; the former abutting on the east side and the latter on the west side of this 14-foot way.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes-

This way is generally used for vehicles and foot passengers alike, but at the time in question the passengers taking the ferry on the Ontario side, as well as those taking it on the Michigan side, were required to pay their fares on the Michigan side of the river; and gates were maintained in addition to those before mentioned, at the northeast and southwest corners of the ticket office, and a turnstile was in the footway upon the south side of that office.

Dr. Rogers had passed along the footway to and through the gate first mentioned to a point about one-half the width of the ticket office, when he was successfully hailed by a call from a customs deputy collector and inspector, who, standing within a few feet of the gate at the first turn in the footway, had vainly called to him (Rogers) three times before. Rogers then turned from an eastward to a westward course and walked to the customs office, where, being asked by the deputy "if he had any dutiable merchandise about him," he answered, "Yes, I have." Upon request of the deputy to let him have it, Rogers "took the cloth from under his overcoat and gave it" to the deputy. The latter testified that:

"It was pinned on his breast outside of his undercoat and under his fur coat with safety pins, and his overcoat was completely buttoned over it."

There are two customs offices in the city of Sault Ste. Marie, Mich. The main office is some distance, perhaps a mile, from the dock. The branch office is the customs office first mentioned herein and at the time had a sign "United States Customs Office" conspicuously posted at the door and in public view. The testimony of Rogers was in substance the same as that of the deputy. Rogers explained that his brother had given him the cloth to be made into a suit; that the reason he carried the cloth under his coat was that he intended to take it to the main customs office to have it appraised and to pay the duty there; that he had had a difficulty with a government immigration officer who was stationed at the dock, and he supposed he would be the one to appraise the goods; that, while he heard the customs deputy say "Doctor," he supposed he was saluting him and claimed to have said "Good day" in response, but when he heard him call out "Dr. Rogers" he stopped, and then walked to the customs office, where the conversation and giving up of the cloth took place as stated by the deputy. Rogers also made these statements:

"I had no intention to evade payment of the duty on the goods whatever. * * * It was not my intention to enter the goods at the customs office at the dock, and I had them under my coat so I could get them by and go on up to the main office. I knew they were dutiable and that the customs office at the dock was located there as described."

The customs collector testified that:

"Goods below the value of $10 are appraised at the dock office and paid there. Above that amount they are appraised and paid at my head office."

The cloth was appraised at $7, and the duty amounted to $5.70.

What offense, if any, was charged and committed? The case appears to have been treated below as involving the offense of "smuggling," yet, in spite of the familiar legal significance of that word, it is not found in the indictment. Some confusion has arisen in the

arguments because of this omission. A portion of the language of the indictment, as well as the indorsement upon it, shows that it was in part drawn under section 3082 of the Revised Statutes (U. S. Comp. St. 1901, p. 2014). But as observed by Mr. Justice White in Keck v. United States, 172 U. S. 434, 437, 19 Sup. Ct. 254, 255, 43 L. Ed. 505, when speaking of the words of that section "contrary to law":

"The words 'contrary to law' contained in the statute clearly relate to legal provisions not found in section 3082 itself."

See, also, United States v. Chesbrough (D. C.) 176 Fed. 778, 780; United States v. Kee Ho (D. C.) 33 Fed. 333; United States v. Claflin, 13 Blatchf. 178, 186, Fed. Cas. No. 14,798.

Counsel for both sides appear at the trial to have regarded the indictment in its entirety as sufficient to identify and so in effect to incorporate the elements as well as the acts constituting the offense of smuggling, as that offense is defined and denounced by section 2865 (page 1905). The learned trial judge evidently treated the indictment in the same way. It is stated in the record that "the court charged the jury, among other things, in substance":

"The goods may be said to have been introduced into the country, under this statute, when the respondent arrived at the customs office located on the dock, and if the respondent passed the customs office at that place with the intention of evading the duty, the offense was committed, and he would be guilty of the offense charged in the indictment, even though he was still within the inclosure."

Neither the form nor the sufficiency of the indictment was questioned by demurrer or motion of any character. Indeed, counsel for the accused in his supplemental brief seems anxious to show that the indictment is sufficient, definitely to charge the offense of smuggling. He says:

"The terms 'smuggling' and to 'clandestinely introduce' into the country mean the same thing, all 'relating to the actual passing of the goods through the customs lines.' Keck v. United States, 172 U. S. 455 [19 Sup. Ct. 261, 43 L. Ed. 505]."

The reason for this contention is doubtless to be found in that portion of the indictment which charges that defendant "did unlawfully, knowingly, and fraudulently * * * bring into the United States certain merchandise * * * clandestinely and without entering the same at the United States Customs Office * * * and paying the duty thereon. * * *" Manifestly to "bring into * * * clandestinely" is the same as to "clandestinely introduce"; and counsel for the accused rightly contends in effect that, if clandestinely introducing is not the same as smuggling, it is quite as certainly denounced as is smuggling by section 2865. See United States v. Chesbrough (D. C.) 176 Fed. 782, as to meaning of the word "bring" as used in the phrase "import or bring" of section 3082. Moreover, the true test of an indictment is not whether it might have been made definite and certain, but whether it contains every element of the offense intended to be charged and "sufficiently apprises the defendant of what he must be prepared to meet." Cochran & Sayre v. United States, 157 U. S. 286, 290, 15 Sup. Ct. 628, 630, 39 L. Ed. 704; Dunbar v. United States, 156 U. S. 185, 190, 15 Sup. Ct. 325, 39 L. Ed. 390.

The effort of the district attorney to sustain the conviction under sections 3098 and 3099 of the Revised Statutes (U. S. Comp. St. 1901, p. 2026)—which in substance inhibit and denounce neglect or refusal of masters of certain vessels and other persons coming into this country from adjacent foreign territory with dutiable merchandise, to deliver a manifest thereof at the office of the customs collector nearest to the place of crossing the boundary line—is not only seemingly inconsistent with his treatment of the indictment at the trial, but if sound is suggestive of fatal vagueness and uncertainty. The district attorney does not say that he had those sections in mind when drawing the indictment; but, as observed by Mr. Justice Harlan in Williams v. United States, 168 U. S. 382, 389, 18 Sup. Ct. 92, 94, 42 L. Ed. 509:

"It is wholly immaterial what statute was in the mind of the district attorney when he drew the indictment, if the charges made are embraced by some statute in force."

While the indictment is lacking in precision and certainty in furnishing means of reference to the particular statute rendering the act charged against the accused "contrary to law" within the meaning of section 3082 (Pagin's Fed. Prac. & Forms, 279; United States v. Chesbrough (D. C.) 176 Fed. 780), we cannot hold at this stage of the case, and in view of its history, that the indictment is defective in any prejudicial sense. Rev. St. U. S. 1025; Dunbar v. United States, 156 U. S. 185, 192, 15 Sup. Ct. 325, 39 L. Ed. 390; Connors v. United States, 158 U. S. 408, 411, 15 Sup. Ct. 951, 39 L. Ed. 1033; Rosen v. United States, 161 U. S. 29, 34, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Durland v. United States, 161 U. S. 306, 315, 16 Sup. Ct. 508, 40 L. Ed. 709; Ledbetter v. United States, 170 U. S. 606, 614, 18 Sup. Ct. 774, 42 L. Ed. 1162; Hardesty v. United States (Sixth Circuit) 168 Fed. 25, 27, 93 C. C. A. 417.

At the close of all the evidence the defendant moved the court to direct a verdict in his favor, which was overruled. He also requested three special charges, which were denied and exceptions taken. The first of these charges was in form the same as the motion to direct. The second comprised for the most part statements of counsel's understanding of the effect of the evidence, and its closing sentence was "and therefore you are instructed to render verdict of not guilty." There was at last no difference between this charge and the first one. The third request embraced an abstract statement of duties of the customs officer and duties and rights of any person whose goods are seized, rather than instructions to the jury touching its duties according as it should find the facts to be in relation to defendant's conduct prior to the seizure. The validity of the exceptions must therefore be tested by the question whether there was any evidence fairly tending to prove the charges of the indictment. It should be stated, however, in passing, that no exception to the charge of the court was taken until after the verdict was rendered and the jury discharged; and, while an assignment of error in this regard was made respecting the charge, it is difficult to see why the court should consider the assignment if the exceptions were taken too late. Hardesty v. United States, supra. But we prefer to pass by the question and consider this alleged error.

like the others, in the light of the evidence. Clyatt v. United States, 197 U. S. 207, 221, 25 Sup. Ct. 429, 49 L. Ed. 726.

The point of the charge of which complaint is made is that the court instructed the jury that:

"If the respondent passed the customs office at that place (the dock) with the intention of evading the duty, the offense was committed."

As we understand the evidence, defendant certainly did pass the customs office located at the dock, and he did so with full knowledge of its location and of the fact that he had dutiable goods concealed on his person. Further, it was his intention, as he subsequently avowed, to pass this office without stopping to enter the goods or pay the duty. The deputy collector while standing within a very short distance of defendant was required to hail him four times before he responded; and yet defendant heard the earlier calls. Defendant was given full opportunity to explain, and he did explain to the jury, why he placed the cloth under his overcoat, and why he wished to and intended to pass the customs office at the dock and report at the distant customs office. His whole conduct and defense were fully described and stated to the jury. It cannot escape attention that, when defendant was accosted by the deputy customs collector, all reason for avoiding the immigration officer, and so to have the appraisement of the goods made and to pay the duty at the distant customs office, disappeared, and yet nothing of that kind was mentioned to the deputy. In view, then, of the charge of the learned trial judge, before shown, the verdict of the jury negatives all semblance of defense that Rogers intended to pay the duty at either of the customs offices. Hence we have no right to set aside the verdict and judgment, unless error of law was committed.

The contention, however, is that the acts of defendant were some evidence of an intent to smuggle, but that this was not sufficient. If this were all, we should agree to the proposition. Keck v. United States, supra. But as just pointed out this does not state the whole case. The ultimate theory of counsel is that defendant was entitled as matter of law to pass through and beyond the inclosure adjacent to the dock, before he could be found guilty of the charge. This impliedly admits that the offense could be completed by passing out of the inclosure and before reaching the other customs office. That office may therefore be eliminated from the question urged as to unexecuted intent to smuggle, and the inquiry confined to the customs office at the dock and the inclosure. Certainly no fact was involved and no principle announced in Keck v. United States which would require us to hold that the offense could not be completed within this inclosure. Keck's agent, who was in custody of the diamonds, had not left the ship, and so had not even left the place for declaring his custody and making entry of the diamonds, when they were seized. The distinction involved in this circumstance may be illustrated by two of the cases relied on by defendant's counsel.

In Dodge v. United States (Second Circuit) 131 Fed. 849, 65 C. C. A. 603 (the One Pearl Necklace Case), in answer to a claim of inconsistency between the decision in that case and the decision in the One

Pearl Chain Case, 123 Fed. 371, 59 C. C. A. 499, Judge Lacombe said, at page 852 of 131 Fed., at page 606 of 65 C. C. A.:

"There is a very essential difference between the two cases. Neither claimant made a proper entry of her jewelry; neither of them at the time of making entry mentioned orally to the customs officer that she had any jewelry with her, but one of them gave the officer a written declaration, which, in substance, advised him that she 'had in her baggage and on her person wearing apparel (including jewelry) which she had purchased abroad.' The other made no such declaration, oral or written."

And when Judge Holt came to the last trial of the One Pearl Chain Case (D. C.) 139 Fed. 510, 512, he interpreted the decisions of the Court of Appeals in the two cases thus:

"The court held in U. S. v. One Pearl Necklace, 111 Fed. 165, 49 C. C. A. 287, 56 L. R. A. 130, and the Dodge Case, 131 Fed. 849, 65 C. C. A. 603, that, if a person in entire good faith did not make the declaration, the goods might be forfeited. On the other hand, if the persons who brought the goods here intended to smuggle them, they had an opportunity to change their minds down to the time when it was their duty to make the necessary declaration; and, in my opinion (and I think that is the true construction of the opinion of the Circuit Court of Appeals in this case), the government cannot seize these goods as forfeited until the time has come when the person importing them has had an opportunity to declare them and has not done so."

Thus, one of those claimants saved her jewelry by availing herself of the first opportunity given to make the declaration, and the other claimant lost hers by failing to do so. The opportunity given in each instance was on shipboard, and the discovery of the jewelry in each case was on the wharf and within the bounds (the inclosure) set for passengers during examination of their baggage. Rogers' Case in the respect now under consideration is unlike the One Pearl Chain Case, and identical with the One Pearl Necklace Case. When he knowingly passed the customs office at the dock, and ignored three distinct calls of the customs officer, and as we must conclude, with the intent to evade entering the goods or paying the duty at all, he must be held to have purposely declined the opportunity furnished him to comply with the law, and completed the offense. Counsel's claim comes to be that one must be permitted not only to leave the ship and then to ignore both customs house and customs officer with intent to evade payment of duty altogether, but also to escape from the inclosure, before he can be said to have committed the offense of smuggling. But see Keck v. United States; and United States v. 218½ Carats Loose Emeralds (D. C.) 153 Fed. 643, 647, 648.

For the reasons stated, the assignments of error founded on the refusal of the court to grant a peremptory instruction and the special instructions requested, including the assignment based on the exception to the charge, must be overruled. The remaining assignments of error concern exceptions taken too late, and cannot be considered. Michigan Insurance Bank v. Eldred, 143 U. S. 293, 298, 12 Sup. Ct. 450, 36 L. Ed. 162; Pacific Express Co. v. Malin, 132 U. S. 531, 538, 10 Sup. Ct. 166, 33 L. Ed. 450; United States v. Carey, 110 U. S. 51, 3 Sup. Ct. 424, 28 L. Ed. 67; N. Y. & N. E. R. R. Co. v. Hyde (First Circuit) 56 Fed. 188, 5 C. C. A. 461.

The judgment must be affirmed.