## NEWMAN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 16, 1921.)

No. 40.

Customs duties ⊚➡125—Act of smuggling held fully executed.

Where, after a steamship passenger's baggage declaration had been given to the customs inspector, he replied, in answer to questioning. that he had declared everything, and was searched and diamonds found concealed on his person, *held*, that the act of smuggling was fully executed; it not being necessary to the completion of the crime that he should have left the customs inclosure.

In Error to the District Court of the United States for the Eastern District of New York.

Joseph Newman was convicted of violating Rev. St. § 2865 (Comp. St. § 5548), and brings error. Affirmed.

Louis C. Whiton, of New York City, for plaintiff in error.

Wallace E. J. Collins, U. S. Atty., of Jamaica, N. Y., and Henry J. Walsh, Asst. U. S. Atty., of Brooklyn, N. Y.

Before ROGERS, HOUGH and MAYER, Circuit Judges.

MAYER, Circuit Judge. The single question requiring consideration is whether the facts in this case fall within Keck v. United States, 172 U. S. 434, 19 Sup. Ct. 254, 43 L. Ed. 505. In the Keck Case. supra, Keck, one Von Hemmebrick and Loesewitz, the captain of the steamer Rynland, arranged in Antwerp, Belgium, that Loesewitz, on Keck's behalf, should bring a package belonging to Keck into the United States. As the Rynland approached its mooring in Philadelphia, Pa., a special agent of the Treasury Department boarded her. After a conversation between the special agent and Loesewitz, the latter delivered the package to the government agent and it was found to contain diamonds. Loesewitz had not put the diamonds on the manifest, but he did not leave the ship, nor had he made any customs declaration, up to the time he produced and delivered the package containing the diamonds. Keck was indicted, one of the counts having been laid under section 2865 of the Revised Statutes of the United States (Comp. St. § 5548). That section reads as follows:

"If any person shall knowingly and willfully, with intent to defraud the revenue of the United States, smuggle, or clandestinely introduce into the United States any goods, wares, or merchandise, subject to duty by law, and which should have been invoiced, without paying or accounting for the duty or shall make out or pass, or attempt to pass, through the custom house any false, forged, or fraudulent invoice, every such person, his, her, or their aiders and abettors, shall be deemed guilty of a misdemeanor and on conviction thereof shall be fined in any sum not exceeding five thousand dollars, or imprisoned for any term of time not exceeding two years or both, at the discretion of the court."

The trial court charged the jury ·

"If the statements made here under oath by Capt. Loesewitz respecting his receipt of the package of diamonds in Antwerp and bringing them here are true, the defendant is guilty of the offense charged."

⊚➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Upon the assumption that the acts of Loesewitz were imputable to Keck, the Supreme Court held that the purpose to smuggle was unexecuted, that the various acts were preparatory steps and, thus, that the smuggling denounced by the statute had not reached the stage of consummation. The court said:

"Examining the case made by the record, in the light of the foregoing conclusions, it results that, whether we consider the testimony of the captain alone or all the testimony contained in the record, as it unquestionably establishes that there was no passage of the package of diamonds through the lines of the custom authorities, but that on the contrary the package was delivered to the customs officer on board the vessel itself, at a time when or before the obligation to make entry and pay the duties arose, that the offense of smuggling was not committed within the meaning of the statute, and therefore that the court erred in instructing the jury that if they believed the testimony of the captain they should convict the defendant and in refusing the requested instruction that the jury upon the whole testimony should return a verdict for the defendant."

In the case at bar, Newman, the defendant below, was a passenger on the steamship Stavangerford which arrived at the Thirtieth Street Pier in the borough of Brooklyn on February 17, 1920. Newman left the ship for the pier. Maxon, an inspector of customs had Newman's baggage declaration, and, on the pier, asked him whether he had declared everything he had purchased or obtained abroad. Newman said he had declared everything. The same question was asked of Newman by Acting Deputy Surveyor of Customs O'Connor, and the same answer was given by Newman. A customs appraiser was then called to appraise the articles set forth in Newman's customs declaration. After some further conversation, not here of consequence, O'Connor said:

"I am going to give you one more chance, if you have anything on your person, or anything you bought abroad, and have not declared it; now is your time to declare it; I want to give you every chance in the world to make a declaration."

To this, according to O'Connor, Newman answered:

"I declared everything; go ahead and search me, if you want to." ·

Thereupon Maxon, O'Connor, and another customs inspector named Roberts took Newman aboard the ship, went into a cabin, and searched him. Two fountain pens were removed from one of Newman's vest pockets by Roberts. One seemed to be empty, and Roberts put it back in Newman's pocket. The other pen rattled. Newman was asked by Roberts what was in this pen, and, according to Roberts, he said he did not know—"perhaps a couple of pieces of broken pen; it was out of order a couple of months." Maxon testified that Newman said "he thought the pen was not any good; that a piece of rubber was loose." O'Connor testified that Newman said, "There may be some parts of the pen in there; the pen is broken." The details of the testimony of these three government officers are unimportant. The point is that Newman still persisted in concealment and false statements.

When, shortly thereafter, the pen was broken up by Roberts, 7 diamonds were found in it. Later O'Connor asked Newman whether

he had anything else on his person which he had failed to declare, and Newman then asked, if he made "a clean breast of this," whether immunity would be granted to him. To this O'Connor answered in the negative, saying he had no authority. Thereupon Roberts questioned Newman further, and the latter produced from his overcoat the very pen which Roberts had previously returned to his vest pocket, and in this pen were 4 diamonds. Finally, after further pressing, Newman took a box of tooth paste from a handbag, took a tube out, squeezed it, and the contents fell on the ground. O'Connor picked up the paste, and in it found 2 more diamonds. Thus the 13 diamonds referred to in the indictment were accounted for.

It is difficult to conceive of a more deliberate, deceptive, and ingenious method of smuggling than this testimony discloses. There is testimony that, at a time when the customs officials were not sure that the first fountain pen contained smuggled articles, Newman left the customs inclosure, shadowed by an officer; but we do not place decision on the narrow ground that he thus physically was temporarily outside of the customs inclosure.

When, after repeated inquiry made on the pier, Newman persisted that he had nothing further to declare, at a time when his written declaration had been made to Maxon, and when he had made no mention therein of these diamonds, the act of smuggling was complete. But his clandestine introduction of these goods did not stop there, for even when the rattling fountain pen was taken from him he continued his concealment and false statements. After that, at a time when the customs officers not only had before them a false declaration, but in addition had physical possession of part of the smuggled goods, was it requisite that they should wait until the smuggler left the customs inclosure before they could apprehend him, on the theory that the crime was only then committed? Such a construction would make a mockery of the statute, and render it in large measure useless. In this case there was not an unexecuted purpose, nor a mere attempt to smuggle, as in the Keck Case, supra. On the contrary, there is no similarity between the facts of that case and of this. Here the smuggling had been so fully executed that all that was left for Newman to do was to escape detection. We think that the facts in this case are, perhaps stronger against this defendant than were those in Rogers v. U. S., 180 Fed. 54, 103 C. C. A. 408, 31 L. R. A. (N. S.) 264. We fully agree with the court in that case when referring to that defendant's conduct, it said:

"When he knowingly passed the customs office at the dock, and ignored three distinct calls of the customs officer, and as we must conclude, with the intent to evade entering the goods or paying the duty at all, he must be held to have purposely declined the opportunity furnished him to comply with the law, and completed the offense. Counsel's claim comes to be that one must be permitted, not only to leave the ship and then to ignore both customs house and customs officer, with intent to evade payment of duty altogether, but also to escape from the inclosure, before he can be said to have committed the offense of smuggling. But see Keck v. United States and United States v. 218½ Carats Loose Emeralds (D. C.) 153 Fed. 643, 647, 648."

The judgment is affirmed.