# UNITED STATES *v.* RITTERMAN.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 669.   Argued January 19, 1927.—Decided February 21, 1927.

1. The crime of smuggling as defined by § 593(a) of the Tariff Act of 1922 is consummated if dutiable merchandise is clandestinely

brought into the United States concealed in the owner's baggage after the owner has fraudulently procured a waiver of inspection in the United States by false statements to a customs officer stationed abroad. So *held* where the waiver was rescinded after the owner and baggage had crossed the international boundary, and the owner, upon arrival at the first port of entry, fraudulently failed to declare dutiable articles when called upon. *Keck* v. *United States,* 172 U. S. 434, distinguished. P. 268.

2. Confession in the customs house when the dutiable articles were about to be discovered did not purge the owner of the offense. P. 269.

3. Under the above stated circumstances, the owner was not entitled to forty-eight hours, or any time, to change his mind and make entry of the goods. P. 269.

12 F. (2d) 849, reversed.

CERTIORARI (*post,* p. 685) to a judgment of the Circuit Court of Appeals which reversed a conviction of the respondent for smuggling diamonds into the United States from Canada.

*Solicitor General Mitchell,* with whom *Messrs. J. Kennedy White* and *Harry B. Amey* were on the brief, for the United States.

The clause "without paying or accounting for the duty," contained in the statute considered in the *Keck case,* 172 U. S. 474, was omitted in the reënactment by § 593 (a). Stress is laid in that case on the fact that the goods "before or at the time when the obligation to pay the duty arose, were surrendered to the customs authorities," and on the fact that the antecedent acts outside of the country preparatory to the commission of the overt act of smuggling "were not followed by the introduction of the goods into the United States" (p. 443). It is evident that the basis of the decision in the *Keck case* was that the mere bringing of the merchandise past the three-mile limit, and therefore technically within territorial waters, did not constitute smuggling, for the very moment occasion arose to surrender the mer-

chandise for inspection and declare it, the goods were produced and declared.

The case falls more nearly within the facts of *Newman* v. *United States*, 276 Fed. 798. Petition for certiorari denied, 258 U. S. 623.

The decision in the *Keck case* was also influenced to some extent by the fact that at common law in England the offense of smuggling involved "landing" the goods and not merely bringing them inside the three-mile limit, and in the *Keck case* the diamonds had not been landed.

*Mr. Albert MacC. Barnes, Jr.,* with whom *Mr. James M. Snee* was on the brief, for the respondent.

The administrative provisions of the Tariff Act of 1922 were an attempt to consolidate and re-enact all prior statutes governing the enforcement of the Customs laws. § 2865 R. S. was the smuggling statute. It had been construed by this court in *Keck* v. *United States,* 172 U. S. 474. It was re-enacted with some omissions as § 593a of the Tariff Act of 1922, as a part of that consolidation plan. The *Keck case* produced two conclusions. First, that the statute does not include attempts to smuggle. Second, that there can be no crime of smuggling until the obligation to pay duties arises. Although the second conclusion is based partly on the phraseology of the statute, i. e., "without paying or accounting for the duty," which words have been omitted from the present statute, the action of the Government in the case at bar in charging this very omission in the indictment, creates the same question as that passed on in the *Keck case.* The second conclusion, however, is based upon the definition of "smuggling" as including within it the avoidance of the obligation to pay or account for duties, and the phraseology used in § 2865, R. S., is cited by this Court only as corroborative of the definition which the Court adopted.

The Tariff Act of 1922 and the Customs Regulations promulgated thereunder show a pronounced line of demarcation between ordinary commercial merchandise shipments and passengers' baggage. They make a further distinction between passengers' baggage from contiguous territory and from all other places. All merchandise. shipped in the ordinary commercial way must be invoiced and must also be declared in writing on entry. Passengers' baggage need not be invoiced and the declaration thereof may be oral. All baggage or other articles from Canada must be unladen and inspected at the first port of arrival in the United States. There, only, the obligation to enter, which has been defined in the Customs Regulations as " the transaction of passing merchandise through the Customs," can arise. In the case at bar respondent at that time was deprived of his baggage.

Customs Regulations of 1923, Articles 205 and 395, provide that customs officers shall not open the baggage of passengers. Neither of these regulations was regarded by the officers in this case, who, without the respondent's knowledge and consent removed the bag from the baggage car and concealed it in a room in the Customs House at St. Albans, other than that in which the respondent was being examined, and later, after asking respondent for the key, proceeded to this other room and opened the bag with the key supplied. The law contemplates examination of baggage in the presence of the passenger, and this right of the passenger was totally disregarded. During the search of his person, without referring to the bag, before any obligation arose to pay the duty, respondent mentioned to the collector that in his bag, the key to which was shortly before that time requested, were certain diamonds. Under these circumstances, and on the authority of the *Keck case* and the various decisions of the Circuit Courts of Appeals, the respondent made due entry of the

diamonds and did not commit the crime of smuggling under § 593(a) of the Tariff Act of 1922.

Under § 593 the indictment as drawn is fatally defective in that it fails to charge that the diamonds were merchandise " which should have been invoiced." This is not merely descriptive but is one of the essential averments which must be proved. The averment "without causing said diamonds to be invoiced" is not equivalent to the clause "which should have been invoiced."

Section 593(a) is distinctly a commercial merchandise provision which has no relation to passengers' baggage brought in from Canada. *Keck* v. *United States, supra; Latimer* v. *United States,* 223 U. S. 501; *United States* v. *One Pearl Chain,* 139 Fed. 510; affirmed 139 Fed. 513; *United States* v. *One Trunk,* 184 Fed. 317; *Newman* v. *United States,* 276 Fed. 798; *Dodge* v. *United States,* 131 Fed. 849; *United States* v. *Smith,* 27 Fed. Cas. No. 16319; *United States* v. *Nolton,* 27 Fed. Cas. No. 15897.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The respondent was indicted for smuggling and clandestinely introducing into the United States from Canada, merchandise, viz., 1022.85 carats of unset cut diamonds, without making any declaration to enter the same, and without causing them to be invoiced for the purpose of ascertaining the duties upon them, and without paying or accounting for the duties to which they were subject, although he had an opportunity to do so, with intent to evade payment of such duties. He was convicted in the District Court but the judgment was reversed by the Circuit Court of Appeals. 12 F. (2d) 849. A writ of certiorari (*post,* p. 685) was granted by this Court under the Act of February 13, 1925, c. 229, amending § 240(a) of the Judicial Code. 43 Stat. 936, 938.

On January 28, 1926, the respondent bought a ticket in Montreal for New York and sought to have a Gladstone bag that he carried checked through to New York. A customs inspector, sent there by the United States for the convenience of travellers, asked him about the contents and he answered, ' Just my own personal wearing apparel.' Such examination as the inspector made disclosed nothing but clothing and personal effects. The inspector thereupon tied and sealed the bag and attached the requisite manifest. In the ordinary course of events the strings would have been cut after crossing the boundary line and the bag would have gone on to New York and then would have been delivered to the owner, without more. Some suspicion was felt, however, and the respondent was again questioned after entering the United States and repeated that he had nothing to declare. On the train's arrival at St. Albans, Vermont, which is the port of entry, he was called into the custom house and there again stated that he had nothing, and more specifically, no diamonds, to declare, and on the suggestion that he had a quantity in his possession the day before, in Montreal, said that he had, but placed them in a bank there, named. An examination of his person was begun and, while he was removing his clothes, he was asked for the key to the Gladstone bag and handed it over. The respondent continued undressing, but, before finishing, said to the assistant collector, ' I haven't any diamonds on my person; they are in my grip.' Within a few minutes officers who had been examining the bag in another room reported that diamonds had been found hidden there. They were of the amount alleged, were valued at $122,492.43, United States valuation, and were subject to a duty of twenty per cent. Act of 1922, c. 356, Title I, Schedule 14, Par. 1429, 42 Stat. 858, 917. It does not appear that the discovery was brought about by the confession. It seems to have been the result of search alone.

The Tariff Act of 1922, c. 356, § 593 (a) ; 42 Stat. 858, 982, is as follows:

"*Smuggling and clandestine importations.*—(a) If any person knowingly and willfully, with intent to defraud the revenue of the United States, smuggles, or clandestinely introduces, into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, every such person, his, her, or their aiders and abettors, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding $5,000, or imprisonment for any term of time not exceeding two years, or both, at the discretion of the court."

The Judge gave the following instructions to the jury:

" If you find that the defendant falsely and fraudulently, intending to defraud the revenue of the United States, told Collector Whitehill and Assistant Collector Walsh at the customs house that he did not have any diamonds to declare, this completed the offense of smuggling, notwithstanding that later, while his person was being searched by Assistant Collector Walsh at the customs house, he admitted that he had some diamonds in his Gladstone bag.

" If the defendant intended to smuggle the merchandise in question, he had an opportunity to change his mind up to the time when the obligation to pay or account for duties arose, and if you believe that the defendant did so change his mind and did so declare then it is your duty to find him not guilty.

" If you find as a fact that the defendant had no opportunity to declare the Gladstone bag because it was seized or taken from him, and that his first opportunity to declare the diamonds came at the time when he was asked for the key and before his examination was completed;

if you believe that he then availed himself of this opportunity then your verdict should be not guilty."

The first paragraph of the charge was excepted to and was held erroneous by the Circuit Court of Appeals. It was held that the respondent could not be convicted under § 593. *Keck* v. *United States,* 172 U. S. 434, was taken to establish that smuggling could not be committed before the moment when the obligation to pay arose, that is, after the duty was established at the custom house.

*Keck* v. *United States* did not decide that a man who wishes to smuggle must wait until he can find a custom house. Its effect is simply that the customs line is not passed by goods at sea when they pass the three-mile limit and have not yet been landed. The statute then in force (R. S. § 2865) after the words 'which should have been invoiced' added 'without paying or accounting for the duty.' The omission of the later words is explained in different ways by the two sides, but for the purposes of this decision we treat it as immaterial. Here diamonds were clandestinely introduced upon the soil of the United States, and although they would pass a point at which they ought to be examined, they would not have been, but on the contrary would have been secure from further inspection, had the trick succeeded. If they had been carried across the boundary in such a way as to avoid a port of entry, we suppose that the offence of smuggling would have been complete when they passed the line, although the smuggler might repent and afterwards report for payment of duties. We perceive no difference because of the accident that the goods had to pass a custom house which the respondent's fraud had deprived of further function if it had not been found out.

It does not appear to us to need argument that the diamonds were 'merchandise which should have been invoiced' and appeared to be such on the face of the

indictment. The respondent could not get rid of the duty by hiding them in his stockings and other personal luggage. He could not purge himself of the consequences of his fraud by confessing when he saw that he was on the point of being discovered or, as might have been found, after he had been. The argument that in such circumstances he was entitled to forty-eight hours, § 484(a), or any time to change his mind and make entry of the goods, seems to us extravagant. Repentance came too late.

*Judgment reversed.*