### McGILL v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
October 15, 1928.

No. 5463.

W. G. Beardslee, of Seattle, Wash., for plaintiff in error.

Anthony Savage, U. S. Atty., and David Spalding, Asst. U. S. Atty., both of Seattle, Wash.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

RUDKIN, Circuit Judge. Section 593 of the Tariff Act of 1922, 42 Stat. 982 (19 USCA §§ 496, 497), provides that, if any person knowingly and willfully, with intent to defraud the revenue of the United States, smuggles, or clandestinely introduces, into the United States any merchandise which should have been invoiced, every such person, his, her, or their aiders and abettors, shall be deemed guilty of a misdemeanor.

The first count of the indictment charges that at Port Angeles harbor, in the Northern division of the Western district of Washington, the defendant did knowingly, willfully, unlawfully, and feloniously, and with intent to defraud the revenue of the United States, smuggle and clandestinely introduce into the United States, from a foreign country, certain intoxicating liquors which should have been invoiced, the importation of which in the manner aforesaid was prohibited by law. The testimony on the part of the government tended to prove that about 9 o'clock in the evening of March 6, 1927, officers of the Coast Guard sighted a boat without lights coming around the sand spit which extends from the main land about 2½ or 3 miles from the Port Angeles harbor. The Coast Guard followed the boat with a patrol boat, but lost sight of it for a few minutes. Later the boat was sighted about 500 feet from the Standard Oil dock in the harbor, headed out towards the sound, and upon seizure was found to contain intoxicating liquor. During the short interval that the boat was out of sight it did not have time to land its cargo, and there was no evidence that any portion of it was in fact landed. On the foregoing testimony the court below instructed the jury in effect that, if the liquor was brought within the territorial waters of the United States, that is, within the 3-mile limit, the offense was complete. The present writ of error was sued out to review a judgment of conviction, and the correctness of above instruction is the only question presented for decision.

The case of Keck v. United States, 172 U. S. 434, 19 S. Ct. 254, 43 L. Ed. 505, was based on a similar statute. The testimony in that case tended to prove that a resident of Antwerp, Belgium, delivered a small package containing diamonds to the captain of

the steamer Rhynland, stating that the package belonged to Keck, the plaintiff in error, that it did not contain any valuables, and the captain was requested to take the package to America. Keck was present when this conversation took place, and he likewise informed the captain that the package contained no valuables, and that he desired it sent to a certain address in Cincinnati, which he wrote on a card. Having received information as to the above transaction, revenue officers boarded the Rhynland upon her arrival at Philadelphia, and the diamonds were seized and taken from the captain. In considering the question whether the foregoing facts brought the case within the statute, the court said:

"Whatever may be the difficulty of deducing solely from the text of the statute a comprehensive definition of smuggling or clandestine introduction, two conclusions arise from the plain text of the law: First. That whilst it embraces the act of smuggling or clandestine introduction, it does not include mere attempts to commit the same. Nothing in the statute by the remotest possible implication can be found to cover mere attempts to commit the offense referred to. It was indeed argued at bar that as the concealment of goods at the time of entering the waters of the United States tended to render possible a subsequent smuggling, therefore such acts should be considered and treated as smuggling; but this contention overlooks the plain distinction between the attempt to commit an offense and its actual commission. If this premise were true, then every unlawful act which had a tendency to lead up to the subsequent commission of an offense would become the offense itself; that is to say, that one would be guilty of an offense without having done the overt act essential to create the offense, because something had been done which, if carried into further execution, might have constituted the crime. Second. That the smuggling or clandestine introduction of goods referred to in the statute must be 'without paying or accounting for the duty,' is also beyond question.

"From the first of the foregoing conclusions it follows that mere acts of concealment of merchandise on entering the waters of the United States, however preparatory they may be and however cogently they may indicate an intention of thereafter smuggling or clandestinely introducing, at best are but steps or attempts not alone in themselves constituting smuggling or clandestine introduction. From the second, it results that as the words, 'without paying or accounting for the duty' imply the existence of the obligation to pay or account at the time of the commission of the offense, which duty is evaded by the guilty act, it follows that the offense is not committed by an act done before the obligation to pay or account for the duties arises, although such act may indicate a future purpose to evade when the period of paying or securing the payment of duties has been reached. If this were not a correct construction of the statute, it would result that the offense of smuggling or clandestine introduction might be committed as to goods, although entry of such goods had been made and all the legal duties had been paid before the goods had been unshipped. The soundness of the deductions which we have above made from the statute is abundantly demonstrated by the line of argument which it has been necessary to advance at bar to meet the dilemma which the contrary view necessarily involves. For, although it was contended that the offense was complete the moment the concealment existed when the ship arrived within the waters of the United States, it was yet conceded that if in legal time the duties were subsequently paid or secured, there would have been no offense committed. But the contention and the admission are completely irreconcilable, since if the subsequent act becomes necessary in order to determine whether an offense has been committed, it cannot in reason be said that the offense was complete and had been committed before the subsequent and essential act had taken place.

"These conclusions arising from a consideration of the text of the statute are rendered yet clearer by taking into view the definite legal meaning of the word 'smuggling.' That term had a well understood import at common law, and in the absence of a particularized definition of its significance in the statute creating it, resort may be had to the common law for the purpose of arriving at the meaning of the word. Swearingen v. U. S., 161 U. S. 446, 451 [16 S. Ct. 562, 40 L. Ed. 765]; United States v. Wong Kim Ark, 169 U. S. 649 [18 S. Ct. 456, 42 L. Ed. 890].

"Russell, in his work on Crimes (volume 1, p. 277, 6th English edition), thus speaks of the offense: 'Amongst the offenses against the revenue laws, that of smuggling is one of the principal. It consists in bringing on shore, or carrying from the shore, goods, wares or merchandise, for which the duty has not been paid, or goods of which the importation or exportation is prohibited; an of-

574

fense productive of various mischiefs to society.'

"This definition is substantially adopted from the opening sentence of the title 'Smuggling and Customs' of Bacon's Abridgment, and in which, under letter F, it is further said: 'As the offense of smuggling is not complete unless some goods, wares or merchandise are actually brought on shore or carried from the shore contrary to law, a person may be guilty of divers practices which have a direct tendency thereto, without being guilty of the offense. For the sake of preventing or putting a stop to such practices, penalties and forfeitures are inflicted by divers statutes; and indeed it would be to no purpose, in a case of this kind, to provide against the end, without providing at the same time against the means of accomplishing it.'

"So also Blackstone defines smuggling to be 'the offense of importing goods without paying the duties imposed thereon by the laws of the customs and excise' (4 Black. Com. 154), the words 'importing without paying the duties' obviously implying the existence of the obligation to pay the duties at the time the offense is committed, and which duty to pay is evaded by the commission of the guilty act.

"A reference to the English statutes sustains the statement of the text-writers above quoted, that the words 'smuggling' and 'clandestine introduction,' so far at least as respected the introduction of dutiable goods from without the kingdom, signified the bringing of the goods on land, without authority of law, in order to evade the payment of duty, thus illegally crossing the line of the customs authorities."

Speaking of the effect of this decision in the recent case of United States v. Ritterman, 273 U. S. 262, 47 S. Ct. 371, 71 L. Ed. 636, Mr. Justice Holmes said:

The case of "Keck v. United States did not decide that a man who wishes to smuggle must wait until he can find a custom house. Its effect is simply that the customs line is not passed by goods at sea when they pass the three-mile limit and have not yet been landed."

Under the authority of these cases, it seems clear that the intoxicating liquor here involved was not smuggled or clandestinely introduced into the United States within the meaning of the act in question. The instruction of the court below was therefore erroneous, and for this error the judgment is reversed and the cause is remanded for a new trial.