## UNITED STATES v. MERRELL et al.*
### No. 361.

Circuit Court of Appeals, Second Circuit.
Aug. 31, 1934.

L. HAND, Circuit Judge, dissenting in part.

———————

Howard W. Ameli, U. S. Atty., and Herbert H. Kellogg and Alfred C. McKenzie, Asst. U. S. Attys., all of Brooklyn, N. Y.

Harry S. Austin, of New York City (Henry Fabricant, of New York City, on the brief), for defendant-appellant.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellant and seven others were tried on an indictment containing three counts. The first count charged that the defendants conspired together and with other persons unknown (a) fraudulently to import into the United States merchandise described as intoxicating liquors containing more than one-half of 1 per cent. of alcohol by volume which were fit and intended for use for beverage purposes, by bringing in such liquors without paying the customs duties thereon, without manifesting them, without declaring and entering them at the Customs House, and without inspection; (b) to facilitate the transportation, concealment, and sale of such merchandise; and (c) to introduce it into the commerce of the United States by means of false and fraudulent invoices, declarations, and affidavits. The second count was for smuggling the merchandise already described. The third count charged facilitating the concealment and transportation of such smuggled merchandise.

All the defendants were acquitted except Merrell. He was convicted on all counts and sentenced to imprisonment under each count with the sentences to run concurrently.

At a quarter past 11 in the forenoon of October 5, 1933, a Coast Guard boat sighted the American gas yacht Aera coming in from sea near Block Island. She followed the yacht for fifteen or twenty minutes; her commander, having become suspicious when he saw that the Aera was down at the bow, reported by radio to his base. For a while he thought that the yacht's steering apparatus was being repaired, and cruised around her. Then he ordered the Aera into Plum Gut and, the weather being too rough to board and search there, directed her to go into Plum Gut Harbor so that this might be done. After men had gone aboard the Aera, they were told there was liquor on board, and the cap-

*Writ of certiorari denied 55 S. Ct. 346, 79 L. Ed. —.

tain of the Coast Guard readily found seven cases of liquor in the forepeak. He then arrested the captain and crew and took the yacht to the barge office in New York. The defendant Merrell was the captain arrested, and the acquitted defendants were the members of his crew. A thorough search disclosed 937 bags of assorted liquors, 40 kegs of brandy, 11 kegs of other liquors, and 800 gallons of Scotch whisky in bulk in the yacht's tanks. When the yacht's papers were demanded of Merrell during the search, he produced only a certificate of enrollment and yacht license.

When the government rested, after proof of the facts above outlined, motions in behalf of each defendant, to dismiss each count in the indictment were made and denied. And then the defendant Merrell, who was the only witness for the defense, testified that he was the captain of the Aera employed by the owner, Carter, at a monthly salary. He further testified that, when returning from Maine, where he had taken three passengers at the owner's orders, he had discovered the British ship Dorin in distress about thirty miles at sea off the Bay of Fundy. He had hailed the ship and, quite to his surprise, found her in command of Captain De Carr, whom he had known at Brest, France, during the war. De Carr told him the Dorin was leaking near the water line and asked him to take on part of the cargo to lighten the ship. Merrell acceded to this request and took aboard all the liquor found when the Aera was seized. He was, under his arrangement with De Carr, to take it to New York, declare it, and bond it until such time as traffic in such liquor became lawful in this country. There was no understanding as to further communication with De Carr. Merrell had no manifest and no exact record of the liquor, but testified that he intended to take care of that when he reached New York. He did not, however, make such intentions known when the Aera was boarded and searched. Nor do we imply by stating this fact that his silence in this respect was itself evidence of guilt. He had the right to be silent if he chose. The whisky in the tanks was transferred from the Dorin, he testified, in casks and poured into the ballast tanks of the Aera after they had been emptied for this purpose.

In deciding whether the evidence supports the verdict, we are not confined to that introduced by the government, but must now consider, of course, all of that together with the testimony of Merrell. So there is no doubt whatever that the liquor was brought by him from outside of the United States into this country's territorial waters. We are, however, urged to reverse upon the claim that, if any offense was committed, it was a violation of the National Prohibition Act (27 USCA), which has now been repealed and cannot afford any basis for the affirmance of a conviction obtained under it and while it was in effect. United States v. Chambers, 291 U. S. 217, 54 S. Ct. 434, 78 L. Ed. 763, 89 A. L. R. 1510, Feb. 5, 1934. The answer to this is that the indictment was based not upon the National Prohibition Act, but upon the Tariff Act of 1930, § 593 (19 USCA § 1593), and the liquor, even though contraband, was dutiable merchandise. Section 1, Schedule 8 (19 USCA § 1001, Schedule 8) Tomplain v. United States (C. C. A.) 42 F.(2d) 203. The repeal of the Eighteenth Amendment had no effect upon prosecutions under the Tariff Act. United States v. 3190 Bags (C. C. A.) 70 F. (2d) 246.

The acquittal of all the defendants except Merrell is said to make it impossible to sustain his conviction under the conspiracy count, since he could not conspire alone, but this loses sight of the allegation that he conspired with persons unknown to the grand jury as well as with the persons indicted with him. When Merrell testified that he brought in the liquor in accordance with his agreement with De Carr so to do, the jury had ample evidence on which to find that the liquor was brought in from the high seas pursuant to agreement, and whether or not pursuant to an unlawful agreement between conspirators depended upon what they found the substance of the agreement to be. They were at liberty to believe Merrell in part and reject such portion of his testimony as they had reason to believe, and did believe, was false. If he conspired with De Carr, his conviction must stand. Grove v. United States (C. C. A.) 3 F.(2d) 965; Donegan v. United States, 287 F. 641. Sensible men would hardly be expected to accept his story of aid to a distressed ship at sea as the true explanation of the presence of the liquor on the yacht. Such a tale seems rather fantastic to say the least. Besides, Lowe, a boatswain's mate on the Coast Guard boat, testified that when they were going to New York after the seizure he said to Merrell, "Pretty tough luck, captain;" and that Merrell replied, "Yes; I invested my last dollar in it." Merrell neither denied that he had this conversation with Lowe nor gave any explanation of it. The jury doubtless believed that it occurred, and, if so, there was little left of the story of succor to a distressed

ship. The reference to the investment in "it" must have been to the liquor, for Merrell was only the salaried captain of the yacht and not its owner. I think the jury was justified in believing that, beyond a reasonable doubt, Merrell brought in the liquor in accordance with an agreement he made with De Carr, and that the circumstantial evidence showed to the same degree of certainty that this agreement was to land it in this country in violation of the Tariff Act notwithstanding his tale of intent to declare it. He might well have invested his last dollar in it and yet been acting jointly for himself and De Carr who retained an interest in it. See Jelke v. United States (C. C. A.) 255 F. 264; Stack et al. v. United States (C. C. A.) 27 F.(2d) 16; Lucadamo v. United States (C. C. A.) 280 F. 653. The overt act alleged and proved in furtherance of the conspiracy was the transportation of the merchandise into the territorial waters where it was seized. But my brothers do not agree with me in this, and so the judgment and sentence on this count is reversed for failure of proof in accordance with the dissenting opinion of Judge HAND.

The government has conceded that the evidence was insufficient to support the conviction under the second count for smuggling, and we accept this concession as adequate ground for reversing the judgment and sentence as to that count. But this does not, as a matter of law, affect the conviction on the third count. United States v. Max Rubin (C. C. A.) 49 F.(2d) 273.

While it is not exactly consistent with the admitted lack of proof to sustain the smuggling count to argue that the conviction under the third count for facilitating the transportation and concealment of smuggled merchandise after importation should be upheld, the inconsistency amounts to nothing more than a withdrawal of the charge contained in the second count while insisting that the charge under the third count was proved, and is not a matter of which the defendant may, or does, complain.

The appellant relies upon Keck v. United States, 172 U. S. 434, 19 S. Ct. 254, 43 L. Ed. 505, as requiring a reversal of his conviction under the third count on the theory that the offense was not made out until it was proved that the yacht had passed a customs barrier and had failed to report and declare the merchandise. That it is not necessary in every instance first to pass a port of entry and fail to report and declare the goods before the offense is committed is shown by United States v. Ritterman, 273 U. S. 261, 47 S. Ct. 371, 71 L. Ed. 636, where it is recognized that a bringing of dutiable goods across the boundary in such a way as to avoid a port of entry is enough. Then, too, in Cunard S. S. Co. v. Mellon, 262 U. S. 100, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306, "importation" was given its ordinary meaning, but, as this was only in connection with its use in the National Prohibition Act, we consider it by no means decisive when the Tariff Act is in issue. But the proof in this case justified the jury in believing that this liquor was brought in concealed in the yacht with no intention of taking it to any port of entry and declaring it, but on the contrary with the intention of landing it surreptitiously somewhere on the coast. The bottles bore foreign labels which was some evidence of foreign origin. Nounes v. United States (C. C. A.) 4 F.(2d) 833. And the fact that Merrell gave not the slightest indication when his ship was seized and boarded that he was taking the liquor to declare and enter it at the customs house in New York makes it rather hard to believe that he told the truth when he testified that he then had any such intention. The conviction under the third count was warranted by the evidence. See Gillespie v. United States (C. C. A.) 13 F.(2d) 736; The J. Duffy (C. C. A.) 18 F.(2d) 754; Tomplain v. United States, supra. What has already been said is sufficient to show that there was no reversible error in the charge.

Judgment and sentence on the first and second counts reversed. Otherwise the judgment is affirmed.

L. HAND, Circuit Judge (dissenting).

Although the jury acquitted all the defendants named in the indictment as Merrell's accomplices, still since the indictment contained the allegation that they had all conspired "with divers other persons to the Grand Jurors unknown," I am willing to assume that it would support a conspiracy between Merrell and any one else, no matter whom. Also I agree that the jury might not only refuse to accept his testimony, but use it affirmatively against him. However, the story, as he gave it, was not of an unlawful conspiracy, nor was there any part of it which would support such a charge without additions which the jury had no warrant for supplying. Merrell was indeed engaged in unlawfully importing liquor, but count one did not charge him with that, but with conspiring to do so. Nobody can possibly know whether he got the liquor on a straight sale, and

was bringing it in as a venture of his own; or whether the phantom De Carr, or some one else, was concerned with him in the enterprise, which was an essential element in a conspiracy. He was not tried on any such theory, and there was no evidence of such a conspiracy.

As to the third count the evidence was perhaps enough, but the charge did not survive December 5, 1933. When the Eighteenth Amendment was repealed all "implementing" legislation fell with it, whether it was in the National Prohibition Act, or the Tariff Act, or anywhere else. So far as laws imposed taxes on liquors of course they remained, and convictions under them will stand, but so far as the charge was merely of bringing in intoxicating liquors, it did not cure the defect to lay the crime under the Tariff Act. In so far as Cross v. U. S., 68 F.(2d) 366 (C. C. A. 5), and Shelton v. U. S., 69 F.(2d) 223 (C. C. A. 5), hold otherwise, I would not follow them; the whole statutory paraphernalia went by the board with the amendment, so far as the offence was based upon the alcoholic character of the goods. Taxation is another matter. As for the meaning of the count, the general allegation that the liquors were imported "contrary to law," even if sufficient standing alone to admit evidence that they had not paid their proper customs, has no such meaning when coupled with a specification that they were unlawful because intoxicating. Indeed the prosecution offered no proof that they had not so paid, though on that I should not rest in the light of Merrell's admissions. This man was really convicted for violating the Eighteenth Amendment, and the effort now is to support the result by recourse to charges which he was never called to answer, I think it should not succeed.