### UNITED STATES v. NICHOLAS.

#### SAME v. HIMES.

#### Nos. 289, 290.

Circuit Court of Appeals, Second Circuit.
June 13, 1938.

Lamar Hardy, U. S. Atty., and George B. Schoonmaker, Asst. U. S. Atty., both of New York City.

Greenbaum, Wolff & Ernst, of New York City (Morris L. Ernst, Alexander Lindey, and Harriet F. Pilpel, all of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

These are appeals from two decrees, dismissing libels of information against a book and certain copies of a magazine, all of which "represent" that articles described in them can be used to prevent conception (§ 211, Criminal Code, 18 U.S.C.A. § 334), and give information "where, how, or of whom" such articles "may be obtained" (§ 245, Criminal Code, 18 U.S.C.A. § 396). The publications came from abroad through the mails and were stopped at the Port of New York. The book was addressed to the claimant, Nicholas, about whom nothing appeared except that he was not a physician; the magazines were addressed to the claimant, Himes, who is the American editor of the magazine which is published in India. The Collector of the Port of New York after examination seized the publications as contraband and the District Attorney filed two libels to confiscate them under § 593(b) of the Tariff Act of 1930, 19 U.S.C.A. § 1593(b). When these came on for hearing the judge held that § 615 of the Tariff Act, 19 U.S.C.A. § 1615, did not shift the burden of proof to the claimant, unless the publications were seized under some law "relating to the collection of duties on imports", which was not the case because no duties were payable upon them, their importation being forbidden. The libellant therefore failed, because it had not proved the scienter necessary under § 593(b).

. We shall assume arguendo that that section covers any merchandise imported "contrary to law", even though the "law" is not part of the Tariff Act itself. We shall also assume arguendo, contrary to the judge below, that § 615 is not limited to cases in which the proposed forfeiture is for the violation of a law designed to protect the revenue of the United States, but that the phrase, "law relating to the collection of duties", is satisfied by any prosecution under § 593(b). We can make both these assumptions, because we think that § 593(b) does not cover contraconceptive publications for the following reasons. It does not define unlawful importation, but incorporates by reference such other statutes as do. In the case at bar only two statutes might answer—§ 211 and § 245 of the Criminal Code, 18 U.S.C.A. §§ 334, 396—but we think that neither will. The Joint Regulations of the Treasury and the Post-Office govern the disposal of matter coming through the mail from abroad: Article 2(a) requires a customs officer to be present when mails are distributed, and to segregate all "printed matter". Articles whose importation is prohibited must be "taken and held by customs officers for appropriate treatment under the customs laws". Article 20(c). By § 2204(2) of the Post-Office regulations prohibited matter from abroad must be withdrawn from the mails and dealt

with under §·725, which requires it to be sent to the Dead Letter Office. Second and third class mail must be so wrapped that "the contents of the package can be easily examined". Art. 581(a). Thus it appears that prohibited printed matter arriving by mail from abroad must inevitably be examined at the border and detained, and from this it seems to us to follow that it has not yet been imported or brought into the United States within § 593(b), 19 U.S.C.A. § 1593(b). If the sender has not actually invited the examination, at least he has in fact facilitated it, unlike the importer in United States v. Ritterman, 273 U.S. 261, 47 S.Ct. 371, 71 L.Ed. 636, who contrived and set in execution a plan, surreptitiously to introduce the goods, which would have succeeded if it had not been uncovered. We hold therefore that § 593(b) of the Tariff Act did not apply. This conclusion is confirmed by § 305 of the same act, 19 U.S.C.A. § 1305, which provided for the seizure among other things of contraconceptive drugs—but not of publications about them—upon their "appearance * * * at any customs office" where they shall be "held by the collector to await the judgment of the district court". Thus there are two statutes dealing with contraconceptive drugs; one which forfeits them on their "appearance" at the customs and the other when they are imported. It seems to us unlikely that § 305, 19 U.S.C.A. § 1305, should be wholly superseded, as it would be, if "appearance" and seizure were "importation"; and if § 593 (b), 19 U.S.C.A. § 1593(b), does not include contraconceptive drugs stopped at the border, certainly the "appearance at a customs office" of contraconceptive books and pamphlets is not importation, for the same words cannot mean one thing as to one kind of goods and another as to another. It is probably true that the omission from § 305 was unintentional, but we are not free to supply the defect, or to twist § 593(b) out of its meaning. Hence it seems to us that the judge was right in refusing to forfeit the res in either suit.

 It does not follow that the publications should be delivered to the addressees. It is one thing to say that they may not be confiscated, and another that the Post-Office must forward them to the addressees in the teeth of §§ 211 and 245 of the Criminal Code, 18 U.S.C.A. §§ 334, 396. Certainly that would have been unlawful, if the importation had been absolutely prohibited, or the mails absolutely denied to them. We have hitherto assumed that that was true, but it is not. We have twice decided that contraconceptive articles may have lawful uses and that statutes prohibiting them should be read as forbidding them only when unlawfully employed. Youngs Rubber Corporation v. C. I. Lee & Co., 2 Cir., 45 F.2d 103; United States v. One Package, 2 Cir., 86 F.2d 737. See, also, Davis v. United States, 6 Cir., 62 F.2d 473. Contraconceptive books and pamphlets are of the same class and those at bar were therefore lawful in the hands of those who would not abuse the information they contained. This excuses the magazines, addressed as they were to their local editor; being lawful in the hands of physicians, scientists and the like, the claimant at bar was their most appropriate distributor. True, he might misuse his privilege, but that chance does not cancel it; if he does, he will then be subject to punishment, but he is not so subject yet, nor can he now be deprived of his property. Hence we conclude that the decree was right as to the magazines. The same reasoning does not apply to the book for the addressee may, or may not, be one of those in whose hands it would be lawful. The regulations, as we have seen, require prohibited matter to be detained, and while theoretically it would be possible to require the officials to prove that the addressee was not privileged in order to detain it, that would effectively frustrate the statute. Only the addressee can prove whether he is among the privileged classes; he ought at least to go forward with the evidence, even if the burden of proof is not eventually upon him. For these reasons we think that although the book may not be confiscated, it should not be delivered. It must go to the Dead Letter Office and its eventual disposition is not before us; but the decree will be without prejudice to any rights of the sender to recover his property.

Decree in United States v. Himes affirmed.

Decree in United States v. Nicholas modified to authorize disposition of the book seized in accordance with the Postal Regulations; this without prejudice to any rights of the sender.