**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Velga Lisa ELKSNIS,
Defendant-Appellant.**

**No. 75–1124.**

United States Court of Appeals,
Ninth Circuit.

Dec. 24, 1975.

Peter M. Shannon, Jr., Atty., Crim. Div., U. S. Dept. of Justice, Washington, D. C. (argued), for plaintiff-appellee.

Robert W. Ripley, Jr., San Diego, Cal. (argued), for defendant-appellant.

## OPINION

Before MERRILL, CHOY and KEN-NEDY, Circuit Judges.

CHOY, Circuit Judge:

Ms. Elksnis appeals from a criminal conviction in the district court on charges relating to possession and importation of illegal drugs. We affirm.

### Background

On June 9, 1974, Elksnis entered the United States as a passenger in an automobile driven by Timothy Stambough. When asked what they were bringing in from Mexico, Stambough responded that they had a bottle of liquor. Observing that Stambough appeared nervous, the customs inspector directed them to the secondary inspection area. After entering the secondary office, Elksnis also appeared nervous to the inspector. A personal search was ordered, and a matron took her into a search room. Once in the room, but before the search began, the matron asked Elksnis if she had anything to turn over. It is apparently a common practice to ask such a question, and female suspects are said to often present contraband in response. Elksnis responded affirmatively and removed three packages containing cocaine and opium from her vagina.

Elksnis's defense at trial was that she had been acting as a government agent and hence lacked the specific intent required by the statutes under which she was charged. She had previously been arrested in Boston for selling heroin to a federal undercover agent and had agreed to assist the agents there in an effort to have that charge dismissed or reduced. She apparently made some attempt to do so, but with no successful results. She then flew to Los Angeles and contacted agents there, one of whom testified that she had given them only vague information and that she had been specifically told not to go to Mexico. The border incident and arrest followed shortly thereafter.

In a jury trial, Elksnis was found guilty of all five counts on which she had been charged: (1) conspiracy to illegally import 88 grams of cocaine, a controlled substance, (2) illegal importation of that cocaine, (3) conspiracy to possess that contraband with intent to distribute, (4) possession with intent to distribute the cocaine, and (5) possession of ½ gram of opium, a controlled substance, variously in violation of 21 U.S.C. §§ 841(a)(1), 844, 846, 952, 960 and 963.

### Issues

Elksnis's appeal presents three issues: (1) whether her trial counsel was incompetent for having permitted and caused improper instructions to have been given to the jury; (2) whether the trial court erred in refusing to admit a tape record-

ing into evidence on the ground that it was cumulative evidence that would have wasted time; and (3) whether her admission or declaration of the contraband in response to the inquiry prior to the personal search precludes her convictions for illegal importation.

## Competence of Counsel

■ As requested by Elksnis's trial counsel, the court instructed the jury on an entrapment defense. With new counsel on appeal, Elksnis now argues that the defense's theory was not that she had been entrapped, but rather that she lacked the requisite specific intent because she thought she was acting as a government informant. Thus, it is argued, the given charge served to confuse the jury and failed to properly instruct them on the specific intent issue. The failure to object to instructions at trial ordinarily precludes raising an objection on appeal under F.R.Crim.P. 30. However, Elksnis presents the contention in terms of ineffective assistance of counsel, claiming that the submission of and failure to object to the instructions on entrapment establish the incompetence of her trial counsel.

■ To establish a claim of incompetent or ineffective counsel Elksnis has the burden of demonstrating that counsel failed to render reasonably effective assistance, and the result was a denial of fundamental fairness. *Smith v. United States,* 446 F.2d 1117, 1119 (9th Cir. 1971); see also *United States v. Martin,* 489 F.2d 674, 677 (9th Cir. 1973), cert. denied, 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974). The alleged incompetence here does not even approach this standard.

■ It is questionable whether submission of improper instructions by itself could establish counsel's assistance as being constitutionally deficient; but we need not reach that question for the instructions given here do not appear to have been erroneous. In reviewing jury instructions, we must judge them in context and as part of the whole trial. Iso-

lated, individual statements do not by themselves establish error. The question is whether the complete package was misleading or represented a statement inadequate to guide the jury's deliberations. *United States v. Park,* 421 U.S. 658, 673–676, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). The charge here referred to and explained the specific intent requirement several times, and it was discussed in defense counsel's closing argument as well. The instructions on entrapment now objected to by Elksnis were themselves phrased in terms of specific intent. The charge accurately laid out the specific intent issue for the jury and so cannot be called inadequate.

■ Nor do we believe that the entrapment instructions were improper as likely to have confused the jury. As noted, they were presented in terms of Elksnis's intent. Moreover, there was some notion of entrapment lurking in the background of the trial, not in the usual sense of an undercover government agent playing a role as a direct criminal participant, but in terms of whether the agents coerced or motivated Elksnis's action. The issue of entrapment was reasonably related to and raised as a variation on the specific intent theme, so the instructions were not irrelevant.

The defense presented on behalf of Elksnis was capable, leaving no basis for finding her counsel's assistance incompetent.

## Admission of Tape Recording

During the presentation of the defense case at trial, counsel for Elksnis tried to introduce into evidence and have played for the jury a 45-minute tape recording, made by a government agent, of several telephone conversations on a single day between Elksnis, her Boston drug supplier, and an undercover agent. The tape was offered to show that Elksnis had made a sincere effort to introduce the Boston undercover agent to a narcotics dealer. The trial judge refused to allow it to be played on the ground that it was cumulative and would have been a waste

of time. Instead, the court permitted further questioning of the agent involved.

■■ The district court has considerable discretion even with admittedly relevant evidence in rejecting that which is cumulative. *Hamling v. United States,* 418 U.S. 87, 127, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). It does not appear to us that such discretion was abused here. Even before the attempt to introduce the tape, the agent had testified that Elksnis had done her best to make the introduction. Later, he again stated that she had been trying to cooperate and had been "sincere in her efforts to help." In his summation, counsel for the Government conceded that she had made "some honest attempt" to assist the Boston agent. The agents disparaged her effectiveness as an informant and her credibility in claiming that she could produce, but not her sincerity in trying. The tape could thus be fairly described as cumulative, and the trial court did not abuse its discretion in excluding it.

*Pre-Search Declaration of Contraband*

■ Elksnis concedes that she did not take the first opportunity to declare the drugs in her possession. After coming under suspicion and being taken into the search room, she responded to the matron's inquiry prior to the start of the physical search by acknowledging that she had contraband and turning it over. Although the claim was not raised before the district court, she now argues that the matron's question represented a second opportunity for her to declare the goods, and that by responding as she did she effectively declared them and so cannot have been guilty of illegal importation.

The contention is without merit. The cases cited in support of the proposition speak in terms of the first opportunity. *Lozano v. United States,* 17 F.2d 7 (5th Cir. 1927); *Rogers v. United States,* 180 F. 54 (6th Cir. 1910); *Pickett v. United States,* 223 F.Supp. 695 (S.D.Cal.1963), *cert. denied,* 379 U.S. 939, 85 S.Ct. 346, 13 L.Ed.2d 349 (1964). One of the cases,

*Rogers,* stands directly in opposition to Elksnis's claim, for there the conviction was affirmed because the accused had not responded to the first opportunity, though he had to the second. The Supreme Court rejected a similar contention in *United States v. Ritterman,* 273 U.S. 261, 47 S.Ct. 371, 71 L.Ed. 636 (1927), concluding, at 269, 47 S.Ct. at 372, that the defendant "could not purge himself of the consequences of his fraud by confessing when he saw that he was on the point of being discovered or, as might have been found, after he had been." Elksnis attempts to distinguish *Ritterman* by noting that the "declaration" there did not come in response to an inquiry. There is no reason to attach such import to the matron's question. The matron's attempt to minimize the unpleasantness of the body search, after detection seemed imminent, should not be available to Elksnis as a loophole to escape punishment. As the Court observed in *Ritterman,* "[r]epentance came too late." 273 U.S. at 269, 47 S.Ct. 371.

Affirmed.