UNITED STATES of America, Appellee,

v.

**Santiago Panzardi LESPIER, Defendant, Appellant.**

UNITED STATES of America, Appellee,

v.

**Jose Eduardo Panzardi ALVAREZ, Defendant, Appellant.**

**Nos. 77–1346, 77–1347.**

United States Court of Appeals, First Circuit.

Argued Feb. 5, 1979.

Decided June 28, 1979.

---

8. Thus, Santiago could no longer be prosecuted. 18 U.S.C. § 3282.

Carlos Perez Olivo, San Juan, P. R., for defendants, appellants.

Daniel F. Lopez Romo, Asst. U. S. Atty., San Juan, P. R., with whom Julio Morales Sanchez, U. S. Atty., San Juan, P. R., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, JAMESON, Senior District Judge.*

JAMESON, District Judge:

Appellants, Santiago Panzardi Lespier and Jose Eduardo Panzardi Alvarez, were convicted of willfully and knowingly, and, with intent to defraud the United States, smuggling and clandestinely introducing into the United States merchandise which should have been invoiced, i. e., 234 cases of liquor, in violation of 18 U.S.C. §§ 2 and 545.[1] The sole question presented on this appeal is whether the district court erred in denying appellants' motion to dismiss the indictment on the ground that they could not be found guilty of smuggling because the merchandise had not been landed on shore when their vessel was intercepted and they were arrested by United States Customs officers.

## Factual Background

The facts are undisputed. On the night of December 7, 1976, United States Customs agents, acting pursuant to a tip, spotted a boat entering the St. Thomas, Virgin Islands area with its lights "extinguished". Through the use of a night scope the agents observed the boat dock and a group of men loading cases of liquor from a truck into the boat. Whenever other boats approached the area the loading was stopped. After the loading was completed, the boat, later identified as the Bomari, left St. Thomas, and headed directly toward Puerto Rico. The running lights were off until the boat was 200 to 300 yards from the dock. The boat was then followed visually by the Customs agents while the lights were on, as well as by night scope and radar. When the Bomari was about one mile from the coast of Culebra, an island off the shore of Puerto Rico and within the United States territorial waters, the running lights were again extinguished. The boat started to change course and use evasive tactics. The Customs boats turned on their sirens and gave chase. The Bomari almost crashed into one of the Customs boats.

---

* Of the District of Montana, sitting by designation.

1. 18 U.S.C. § 545 provides:

Whoever knowingly and willfully, with intent to defraud the United States, *smuggles, or clandestinely introduces* into the United States any merchandise which should have been invoiced, or makes out or passes, attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document, or paper; or

Whoever fraudulently or knowingly *imports or brings into the United States,* any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

[is guilty of a felony].

.     .     .     .     .

The term "United States", as used in this section, shall not include the  .  .  .  Virgin Islands  .  .  .

(Emphasis added)

After overtaking and boarding the Bomari, the agents found 234 cases of liquor covered by a tarp. Neither of the appellants possessed the required manifest or invoice for the liquor. When a Customs agent asked Panzardi Lespier if he had a manifest or invoice, he replied, "No, I have nothing", and said he had bought the liquor with his own money. Later, after landing, he told the agents that the liquor was owned by a military officer of the Dominican Republic and that the Bomari's final port was the Dominican Republic.

At trial the Government and appellants stipulated that the point at which the Customs agents intercepted the Bomari was one mile offshore Culebra. Appellants then moved to dismiss the indictment for failure to show that they had landed the goods on shore. The district court denied the motion, and both appellants were convicted in a jury trial.

### Statutory Provisions

The statute involved, 18 U.S.C. § 545, is a compilation of several earlier statutes. The first paragraph prohibits persons from knowingly and willfully, with intent to defraud the United States, *smuggling or clandestinely introducing* into the United States any merchandise which should have been invoiced. The second paragraph prohibits persons from fraudulently or knowingly, *importing or bringing* into the United States any merchandise contrary to law.[2] These paragraphs have been held to constitute two distinct and separate offenses.[3] Appellants were charged with violating the first paragraph.

### Contentions on Appeal

Appellants contend that while they may have been guilty of importing or bringing into the United States merchandise contrary to law, they were not guilty of smuggling or clandestinely introducing merchandise because they did not bring the liquor on shore. This, they argue, is an essential element of the smuggling offense under *Keck v. United States*, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505 (1899).

In contending that appellants were properly charged under the first paragraph of § 545, the Government argues that it is not required in every case to show that the goods were actually landed on shore. It contends that (1) the smuggling of goods into the United States must be considered with reference to the "place, circumstances, and intention where the goods were found"; (2) smuggling refers to any method of introducing goods into the United States "surreptitiously by concealment or fraud"; and (3) this case, unlike *Keck,* involved a "commercial shipment" of liquor that could not be brought into Puerto Rico because it was prohibited by law.

### Definition of Smuggling under "Keck"

In *Keck v. United States, supra,* the Court held that the offense of smuggling or clandestine introduction of goods into the United States is not committed until the goods are landed on shore. It is necessary to review the holdings in *Keck* and its progeny in the light of the facts in this case to determine whether, as the Government contends, factual and statutory differences will sustain appellants' convictions, even though the goods had not been landed on shore when the vessel was intercepted and the appellants placed under arrest.

In *Keck* the defendant Keck persuaded Loesewitz, the captain of the steamer

2. The first paragraph derived from 19 U.S.C. § 1953(a), which had as its source section 2865, Revised Statutes, as amended by Act of February 27, 1877, ch. 69, § 1, 19 Stat. 247. The second paragraph derived from 19 U.S.C. § 1953(b), which had as its source section 3082, Revised Statutes.

3. See, *e.g., Babb v. United States,* 218 F.2d 538, 540 (5 Cir. 1955), where the court said: "There is a vast difference between smuggling, clandestinely introducing, using false or forged documents, etc., on the one hand, and importing, bringing in or receiving, etc., merchandise, since the first manifestly is unlawful and evil per se, while importing, bringing in, receiving, etc., after importation, is not." *Babb* was quoted with approval in *United States v. Register,* 496 F.2d 1072 (5 Cir. 1974) *cert. denied sub nom. Hornsby v. United States,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 819 (1975).

Rhynland, to carry a small package with him from Holland to Philadelphia, and from there to send it by mail to an address in Cincinnati. Keck told Loesewitz that the package did not contain any valuables, when in fact it contained diamonds. When the Rhynland docked in Philadelphia, Treasury agents immediately went aboard and asked the captain for the package. After obtaining identification from the agents, Loesewitz turned the package over to them. Keck was charged with smuggling in violation of section 2865 of the Revised Codes.[4] In appealing his conviction, Keck contended that while his acts may have constituted an attempt to smuggle, the offense was not completed because his obligation to pay the customs duties had not yet arisen at the time Loesewitz turned the diamonds over to the authorities.

The Supreme Court drew two conclusions as to the definitions of "smuggling or clandestine introduction" from the text of section 2865: (1) the statute did not include mere attempts to smuggle or clandestinely introduce; and (2) the smuggling or clandestine introduction of goods referred to in section 2865 must be "without paying or accounting for the duty". From the first conclusion the Court reasoned that "mere acts of concealment of merchandise on entering the waters of the United States, however preparatory they may be and however cogently they may indicate an intention of thereafter smuggling or clandestinely introducing, at best are but steps or attempts not alone in themselves constituting smuggling or clandestine introduction". From the second conclusion the court reasoned that "as the words, 'without paying or accounting for the duty', imply the existence of the obligation to pay or account at the time of the commission of the offense, which duty is evaded by the guilty act, it follows that the offense is not committed by an act done before the obligation to pay or account for the duty arises, although such act may indicate a future purpose to evade when the period of paying or securing the payment of duties has been reached". 172 U.S. at 444–45, 19 S.Ct. at 257–58.

The Court buttressed its interpretation of section 2865 by looking to the common law definition of smuggling. In English law "smuggling" and "clandestine introduction" signified the "bringing of [dutiable] goods on land, without authority of law, in order to evade the payment of duty, thus illegally crossing the line of the customs authorities". 172 U.S. at 446–47, 19 S.Ct. at 258.[5] A review of prior English and American statutes convinced the Court that a distinction had always been drawn between smuggling—the ultimate result—and the means leading up to its accomplishment.[6] Because the package of diamonds was not passed through the lines of customs authorities but was delivered to them on board the boat "at a time when or before the obligation to make entry and pay the duties arose", the Court concluded Keck had not committed the offense of smuggling within the meaning of section 2865, 172 U.S. at 459, 19 S.Ct. at 263.[7]

In *United States v. Ritterman,* 273 U.S. 261, 47 S.Ct. 371, 71 L.Ed. 636 (1927), the defendant left Montreal, Canada, for New

---

4. Section 2865, Revised Codes, provided in pertinent part:

> If any person shall knowingly and willfully, with intent to· defraud the revenue of the United States, *smuggle, or clandestinely introduce,* into the United States, any goods, and which should have been invoiced, *without paying or accounting for the duty,* or shall make out or pass, or attempt to pass, through the custom-house, any false, forged or fraudulent invoice, every such person, his, her, or their aiders and abettors, shall be deemed guilty of a misdemeanor . . . .. 172 U.S. at 443–44, 19 S.Ct. at 257. (Emphasis added).

5. See text of section 2865, n. 4.

6. Conduct of vessels in United States territorial waters is still closely regulated under the provisions of the Anti-Smuggling Act (codified at 19 U.S.C. §§ 70, 1401 et seq., 1581 et seq., 1701 et seq.; 46 U.S.C. §§ 60 et seq., 277 et seq.)

7. Four justices dissented. The author of the dissenting opinion was "at a loss to understand why an obsolete definition of the English law should be rehabilitated to defeat the manifest intention of Congress". 172 U.S. at 465, 19 S.Ct. at 265.

York, with diamonds hidden in his hand bag. He did not declare the diamonds to a United States Customs inspector in Montreal, nor did he declare them to the Customs inspector when he crossed the border from Canada into Vermont. Only when Customs agents began a personal search of the defendant did he inform the agents he had diamonds in his bag. The Second Circuit Court of Appeals reversed defendant's conviction, holding that *Keck* established smuggling could not be committed before the moment the obligation to pay the duty arose, that is, after the duty was established at the custom house. The Supreme Court reversed, stating: "*Keck v. United States* did not decide that a man who wishes to smuggle must wait until he can find a custom house". Rather, "[i]ts effect is simply that the customs line is not passed by goods at sea when they pass the three-mile limit and have not yet been landed".[8]

In addition to *Keck*, appellants rely heavily on *Wong Bing Nung v. United States*, 221 F.2d 917 (9 Cir. 1955). The defendant, a seaman aboard an American vessel, transported merchandise from the Orient, half of which he declared and removed from the ship when it docked in San Francisco. The other half he left aboard ship and did not declare. He had a fellow seaman ask a Customs agent if the undeclared merchandise could be landed. Upon receiving a negative answer, the seaman friend said defendant would take the goods to Manila. Customs agents seized the merchandise aboard ship. Defendant was convicted of smuggling this merchandise in violation of 18 U.S.C. § 545. The court held that smuggling "requires by-passing the good by the customs and entering the land of the United States", relying, inter alia, upon *Keck* and *Ritterman*. It concluded that the defendant had not committed the offense of smuggling.[9]

In *United States v. Merrell*, 73 F.2d 49, 51 (2 Cir. 1934), the defendant was the captain of a yacht, loaded with liquor, which was coming from sea into the New York harbor area. Prior to landing the yacht was stopped by the Coast Guard which found liquor on board. Defendant was charged in three counts with: (1) conspiracy to import liquor, to facilitate its transportation, and to introduce it into commerce; (2) smuggling liquor; and (3) facilitating the concealment and transportation of smuggled liquor. Defendant was convicted on all counts. On appeal the Government conceded that the evidence was insufficient to support the conviction under the second count for smuggling. As to the third count, the defendant claimed that *Keck* required that the yacht pass a customs barrier and fail to declare the liquor. While accepting the Government's concession as adequate for reversing the judgment on the smuggling count, the court suggested it was "not exactly consistent" for the Government to admit lack of adequate proof to sustain the smuggling count and still argue that the

8. The Court said further:

The statute then in force (R.S. § 2865) after the words "which should have been invoiced", added "without paying or accounting for the duty". The omission of the later words is explained in different ways by the two sides, but for the purposes of this decision we treat it as immaterial. Here diamonds were clandestinely introduced upon the soil of the United States, and although they would pass a point at which they ought to be examined, they would not have been, but on the contrary would have been secure from further inspection had the trick succeeded. If they had been carried across the boundary in such a way as to avoid a port of entry, we suppose that the offence of smuggling would have been complete when they passed the line, although the smuggler might repent and afterwards report for payment of duties.

273 U.S. at 268, 47 S.Ct. at 372.

9. See also *McGill v. United States*, 28 F.2d 572, 573–74 (9 Cir. 1928). In *McGill* the Coast Guard spotted a boat entering the Port Angeles, Washington, harbor area at night without its lights on. The Coast Guard followed the boat, but lost sight of it for a few minutes. When they spotted it again the boat was headed out toward the Sound. The Coast Guard seized the boat and found liquor on board. The boat did not land its cargo on shore. Defendant was charged with smuggling in violation of Section 593 of the Tariff Act of 1922. Based upon *Keck* and *Ritterman* the court concluded that the intoxicating liquor was not "smuggled or clandestinely introduced into the United States within the meaning of the act in question".

conviction for facilitating the transportation and concealment of the smuggled goods should be upheld.[10] Relying upon *United States v. Ritterman, supra,* the court concluded that "it is not necessary in every instance first to pass a port of entry and fail to report and declare the goods before the offense is committed". The court found the evidence sufficient to justify the jury in believing that the "liquor was brought in concealed in the yacht with no intention of taking it to any port of entry and declaring it, but on the contrary with the intention of landing it surreptitiously somewhere on the coast".

### Applicability of Keck

We turn now to the Government's contentions that *Keck* is distinguishable and that under the present statute and the factual situation here presented it is not necessary to show that the goods be landed on shore to commit the offense of smuggling.

The argument made by the Government is essentially one of common sense, based in part on an amendment of the smuggling statute which no longer stresses as an objective the protection of revenue. In 18 U.S.C. § 545, the intent requirement has been changed from "intent to defraud the revenue of the United States" to "intent to defraud the United States", and the phrase "without paying or accounting for the duty", which appeared in section 2865, has been deleted.[11] Under the old statute the Government was required to show that no duty had been paid, and the offense was not committed "before the obligation to pay or to account for the duties arises". *Keck,* 172 U.S. at 445, 19 S.Ct. at 258.

As noted *supra,* however, the Court in *Keck* based its holding that the offense of smuggling or clandestine introduction was not committed until the merchandise was "landed on shore" on two conclusions: (1) that "mere acts of concealment of merchandise" on entering the waters of the United States were "but steps or attempts not alone in themselves constituting smuggling or clandestine introductions"; and (2) the words "without paying or accounting for the duty" implied the existence of the obligation to pay at the time of the commission of the offense. While the change in the statute removes the second basis of the Court's holding, it does not affect the first conclusion, i. e., that mere acts of concealment are not alone sufficient to constitute smuggling or clandestine introduction.

The Government argues further that *Keck* is factually distinguishable. In *Keck* the vessel itself had lawfully entered the United States at a port of entry. Here the masters of the vessel and shippers were the same persons, and the clandestine operation of the vessel itself was observed from the time it was loaded until boarded by customs officers. They were operating the boat at night without running lights. They attempted to flee when approached by the customs boats.

The vessel carried 234 cases of liquor with a value in excess of $20,000—obviously a "commercial shipment", i.e., merchandise imported into the United States of a value in excess of $250, intended to be sold or negotiated in the United States. Under Puerto Rican law a person may not import from the Virgin Islands for his personal use, more than one gallon of alcoholic beverages.[12] Alcoholic beverages in excess of one

---

**10.** Both the second and third counts charged violation of Section 593 of the Tariff Act of 1922. As noted *infra,* the provisions of § 593 of the Tariff Act were repealed and incorporated into the Criminal Code as 18 U.S.C. § 545 in 1948. The second count in *Merrell*—smuggling—was based on a provision similar to the first paragraph of § 545. The third count—"facilitating the transportation and concealment" was based on a provision similar to the second paragraph of § 545.

**11.** In 1922 Congress repealed § 2865, but enacted a similar provision as section 593(a) of the Tariff Act of 1922, Ch. 356, 48 Stat. 858, 989, 992. The new version deleted the phrase "without paying or accounting for the duty". In 1930 Congress re-enacted section 593(a) as part of the Tariff Act of 1930, Ch. 497, Title IV, 46 Stat. 590, 751. In 1948 it repealed this section but incorporated a similar provision into the criminal code in 18 U.S.C. § 545.

**12.** P.R. Laws Ann. Title 13 § 6028.

gallon are taxable and require a certificate from the Secretary of the Treasury of Puerto Rico authorizing delivery of the merchandise.[13] Bomari did not have the required invoices, manifests, permit, certification from the Secretary of the Treasury of Puerto Rico, or clearance from the point of embarkation. It was apparent to the customs officers that appellants had no intention of taking the liquor through any port of entry. We agree with the Government the jury could properly find that appellants intended to land the liquor surreptitiously somewhere on the coast and could find the requisite intent to defraud the United States.

Under these facts appellants could properly have been found guilty of violating the second paragraph of 18 U.S.C. § 545—fraudulently or knowingly importing or bringing into the United States merchandise contrary to law.[14] Unfortunately, however, the Government did not charge this offense.

However clear it was that there was a violation of documentary obligation, or even that there was an intent to smuggle goods into the United States, it is equally clear that appellants did not violate the only law for which they were indicted. The Supreme Court has held that "mere acts of concealment of merchandise on entering the waters of the United States" were "but steps or attempts not alone in themselves constituting smuggling or clandestine introduction". 172 U.S. at 445, 19 S.Ct. at 258. We confess to a sense of frustration, but we feel compelled to follow this express holding of *Keck,* which has been on the books for eighty years and followed in many cases without provoking any action by Congress to clarify the definition of smuggling. Accordingly we reverse the judgments of conviction.

13. P.R. Laws Ann. Title 13 § 6046a.

14. The courts have consistently recognized a distinction between "smuggling" and "importing contrary to law". See *e.g., Wong Bing Nung v. United States, supra,* 221 F.2d 920.

While no case has considered the precise factual situation here presented, the courts have held consistently that to complete the offense of "smuggling or clandestinely introducing", the merchandise must be "landed on shore".